UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------- x
ILUMINADA ORTEGA,

          Plaintiff,

v.

CHAMPAGNE ROOM BK, INC d/b/a DRAFT
BARN d/b/a END ZONE SPORTS BAR &
LOUNGE;
BROOKLYN DRAFT AND GRILL INC d/b/a
DRAFT BARN d/b/a END ZONE SPORTS BAR
& LOUNGE;
ELITE HOLDINGS AND MANAGEMENT, INC
d/b/a ADRENALINE BAR & LOUNGE d/b/a
DRAFT BRN, d/b/a END ZONE SPORTS BAR &
LOUNGE;
RUBEN YEGHOYAN;
YEVGENIY TROFIMCHUK; and
DIMITRI YAGUDAEV; *Individually*,

          Defendants.
------------------------------------- X

Case No.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, ILUMINADA ORTEGA, (hereinafter "Ms. Ortega" or the "Plaintiff") by and through her attorneys, SHALOM LAW, PLLC, complaining of Defendants CHAMPAGNE ROOM BK, INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE; BROOKLYN DRAFT AND GRILL INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE; and ELITE HOLDINGS AND MANAGEMENT, INC d/b/a ADRENALINE d/b/a DRAFT BRN d/b/a END ZONE SPORTS BAR & LOUNGE (collectively hereinafter "End Zone") as a joint or single employer of Plaintiff, and Defendants RUBEN YEGHOYAN (hereinafter "Ruben"); YEVGENIY TROFIMCHUK (hereinafter "Yevgeniy"), and DIMITRI YAGUDAEV (hereinafter "Dimitri") (collectively hereinafter the "Individual Defendants") (End Zone and the Individual Defendants collectively hereinafter the "Defendants"), and upon information and belief states as follows:

## PRELIMINARY STATEMENT

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' willful violation of the Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e–2, *et seq.* ("Title VII"), § 296 of the New York State Executive Law (the "New York State Human Rights Law" or the "NYSHRL"), and § 8-107(1) of the Administrative Code of City of New York (the "New York City Human Rights Law" or the "NYCHRL").

2. Ms. Ortega is seeking damages to redress the injuries suffered as a result of being employed in a hostile work environment where she was repeatedly sexually harassed and **raped**, as well as discriminated and retaliated against by Defendants on the basis of her gender.

3. Ms. Ortega further complains of retaliation for exercising her statutory rights under Title VII, the NYSHRL, and the NYCHRL and complaining of sexual harassment, discrimination, and retaliation within the workplace.

4. This institutional indifference, ignorance of the law, outright hostility, and retaliation to the rights and dignity of a female employee has created and fostered a permissive and toxic culture at End Zone, for which Defendants are liable to the fullest extent of the law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

6. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions.

7. The Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367, as the facts supporting these claims also arise from the same nucleus of events forming the basis for the federal causes of action.

8. Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## ADMINISTRATIVE PREREQUISITES

10. A Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination and retaliation in violation of Title VII has been filed by Plaintiff on January 7, 2021.

11. The EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue"), received on February 25, 2021.

12. Plaintiff has satisfied any and all other prerequisites to the filing of this action.

## PARTIES

13. Plaintiff was and still is a resident of the County of Kings in the State of New York.

14. Plaintiff's "sex" is female, which is protected from discrimination and retaliation by the NYSHRL § 292.

15. Plaintiff's "sex" is also protected from discrimination and retaliation within the meaning of the NYCHRL § 8-102.

16. At all times relevant, Plaintiff was hired and employed as a hostess, waitress, and bartender at corporate Defendants' restaurant, End Zone, located at 28 Dooley Street, Brooklyn, New York, 11235.

17. Upon information and belief, all three corporate Defendants are one and the same – each is simply an alias for the restaurant and bar, End Zone.

18. The corporate Defendants are a joint or single employer of Plaintiff.

3

19. At all times herein relevant, Defendant ELITE HOLDINGS AND MANAGEMENT, INC d/b/a ADRENALINE BAR & LOUNGE d/b/a DRAFT BRN, d/b/a END ZONE SPORTS BAR & LOUNGE has been a for-profit entity duly incorporated under New York law and operating at 28 Dooley Street, Brooklyn, New York 11235.

20. At all times herein relevant, Defendant Dimitri was and is a resident of the State of New York.

21. At all times herein relevant, Defendant Dimitri has been an and agent officer of the corporation ELITE HOLDINGS AND MANAGEMENT, INC d/b/a ADRENALINE BAR & LOUNGE d/b/a DRAFT BRN, d/b/a END ZONE SPORTS BAR & LOUNGE.

22. At all times herein relevant, Defendant BROOKLYN DRAFT AND GRILL INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE has been a for-profit entity duly incorporated under New York law and operating at 28 Dooley Street, Brooklyn, New York 11235.

23. At all times herein relevant, Defendant Yevgeniy was and is a resident of the State of New York.

24. At all times herein relevant, Defendant Yevgeniy has been an officer and agent of the corporation BROOKLYN DRAFT AND GRILL INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE.

25. At all times herein relevant, corporate Defendant CHAMPAGNE ROOM BK, INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE has been a for-profit entity duly incorporated under New York law and operating at 28 Dooley Street, Brooklyn, New York 11235.

26. At all times herein relevant, Defendant Ruben was and is a resident of the State of New York.

27. At all times here Defendant Ruben was an officer and agent of CHAMPAGNE ROOM BK, INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE.

28. Additionally, Defendant Ruben was employed in a supervisory capacity at the restaurant, End Zone, at 28 Dooley Street, Brooklyn, New York, 11235.

29. Further, Defendant Ruben supervised and managed Plaintiff.

30. Accordingly, Defendant Ruben was at all relevant times an agent of all corporate Defendants and had supervisory authority over Plaintiff.

## FACTUAL BACKGROUND

31. Plaintiff was initially hired by End Zone as a hostess, waitress, and bartender in or about September 2020.

32. Upon information and belief, at all times herein relevant, Ms. Ortega was a stellar employee during her entire tenure of employment with End Zone.

33. Upon information and belief, Plaintiff satisfactorily performed **all** of her duties and responsibilities during her employment with End Zone.

34. Moreover, upon information and belief, Plaintiff's work performance was above average, as she consistently received praise and complimentary reviews from the customers and patrons of End Zone, up until the Defendants' campaign of sexual harassment against her.

35. At all times herein relevant, Defendant Ruben was Plaintiff's supervisor.

36. At all times herein relevant, Plaintiff was **not** and never was romantically or sexually interested in Ruben.

37. Further, at all times herein relevant, Ruben had a significant other who was not Ms. Ortega; in fact, at all times relevant, **Ruben was and is currently married with children.**

38. However, despite Ruben's marital status and Plaintiff's **clear** disinterest in pursuing anything romantic with her supervisor, Ms. Ortega became the target of an egregious, unwanted, and discriminatory scheme of sexual harassment by Ruben in the workplace.

39. At all times herein relevant, Plaintiff had **no** sort of consensual sexual relationship with her supervisor Ruben.

40. The sole sexual encounter alleged herein thus occurred **without Ms. Ortega's permission or consent.**

41. Yet, for the duration of her employment with Defendants, Plaintiff was frequently subjected to a hostile work environment due to Defendant Ruben's constant, unreprimanded sexual harassment.

42. Additionally, upon information and belief, End Zone was aware of and acquiesced to Ruben's harassment, never once acting to stop Defendant Ruben's conduct.

43. Beginning on her first day working at End Zone once Defendant Ruben noticed Plaintiff, Ruben targeted Plaintiff, subjecting her to flagrant sexual comments and actions, **which included multiple and repeated highly inappropriate comments about her appearance and increasingly aggressive sexual demands.**

44. On the evening of September 27, 2020 Plaintiff had been ordered to work at an "after-hours party" at End Zone, which Defendants hosted **in direct contravention of New York State and Governor Cuomo's shutdown orders.**

45. Upon information and belief, many of the managers and supervisors at End Zone attended the party, including Ruben.

46. Further, upon information and belief, the entire staff of End Zone who attended the party was drinking, including the supervisors, with Ruben specifically pouring round after round of free shots for the other workers, including the Plaintiff.

47. By 3:00 a.m., after intoxicating Plaintiff with multiple rounds of alcoholic beverages, Defendant Ruben approached Plaintiff and asked if she had seen the rooftop of End Zone. Plaintiff responded that she had not.

48. "Would you like to see it?" Ruben then asked her. "It's an amazing view," he added.

49. Plaintiff immediately asked if they were even allowed to go up there at 3:00 a.m. since End Zone had closed at midnight.

50. Ruben responded, **"Yes, it's fine. Don't worry. I'm your boss and I'm telling you it's okay."**

51. Fearing she would be fired for refusing Defendant Ruben's demand, Plaintiff followed him up to the rooftop.

52. However, when Plaintiff and Ruben reached the roof of End Zone, **Ruben attacked.** Without warning, Ruben shoved Plaintiff against a brick wall, unfastened his pants, turned her around, and began **forcibly raping Ms. Ortega.**

53. As soon as Ms. Ortega understood what was going on, she immediately began crying and begging Ruben to stop, fighting back against him with every ounce of strength she could muster.

54. Unfortunately, Ruben had Plaintiff pinned against the wall, and no matter how hard she struggled, Ruben overpowered her.

55. Ruben's strength did not stop Plaintiff from fighting back, however, as is evidenced by the multitude of scrapes Plaintiff received on her skin from struggling against the rough stone wall Ruben had her pinned against.

56. Unfortunately, however, Ruben **did not stop until he was "finished"** despite Plaintiff's terrified pleas for him to stop, and despite his role as Plaintiff's supervisor and an owner/manager of End Zone.

57. **Ruben forcibly raped Ms. Ortega on the rooftop at End Zone during an "after-hours" party on September 27, 2020.**

58. Plaintiff is in possession of **tangible proof,** specifically, Ruben's *used condom* which he *accidentally* left behind in Plaintiff's pants.

59. In the days after the attack on the rooftop, Plaintiff mentally battled waves of different emotions caused by Ruben's actions, and the next time she worked at End Zone while Ruben was working, she felt extremely uncomfortable, frozen, and paralyzed upon seeing him.

60. Upon information and belief, Ruben, on the other hand, was unfazed by the rooftop incident, and he proceeded to interact with – and even *flirt* with – Plaintiff as if nothing had happened.

61. Plaintiff, however, did not respond to Defendant Ruben and instead actively sought to escape from him in any way she could when he attempted to get near her.

62. When Ruben noticed that Plaintiff was avoiding him, he approached her and expressed that he did not like how Plaintiff was treating him and avoiding him.

63. Accordingly, a few days after the attack, Plaintiff worked up the courage to confront Ruben and inform him that what he did was not okay and that she just wanted to work to earn a living for herself and her children without him flirting with her or touching her.

64. In their discussion, Plaintiff explained to Ruben that she did <u>not</u> want to be sexually or romantically involved with him. She repeatedly emphasized that this was best for both of them since Ruben was **married** and because Plaintiff and Ruben worked together. Further, Plaintiff emphasized that she needed her job at End Zone so she could support her children, and she did not want to jeopardize that.

65. Unfortunately, however, Plaintiff's attempt at talking things out with Ruben only seemed to make him angry, and that is when Defendant Ruben's retaliatory scheme began.

66. Thereafter, Plaintiff began noticing Ruben was not only avoiding her, but he had also stopped scheduling her to work her normal evening shifts, instead giving her short mid-day shifts when End Zone was less busy, resulting in her receiving less wages and tips.

67. Then, suddenly, on November 3, 2021, **Plaintiff was informed by text from Ruben that End Zone "no longer required her services."**

68. To add insult to injury, Ruben informed Plaintiff that she was terminated **because she "forgot a couple of things" the last time she waitressed at End Zone.**

69. However, upon information and belief, this proffered reason for Plaintiff's termination was merely a pretext for Ruben's unlawful sexual harassment, discrimination, and retaliation, which Ruben instigated because he realized Plaintiff would not silently let him continue to sexually harass her; as a result, he wanted her gone.

70. End Zone and its agents and employees, including all the Defendants named herein, who upon information and belief, were aware of Ruben's egregious sexual misconduct which was occurring at the workplace, failed to address same and deliberately turned a blind eye to it.

71. Upon information and belief, Defendants intentionally ignored the hostile work environment created by Ruben's sexual harassment, and instead orchestrated a course of discrimination and retaliation against Plaintiff to force her out of her job at End Zone.

72. In so doing, Defendants engaged in conduct that will very likely thwart other employees from making complaints of discrimination or sexual harassment for fear of retaliation such as Plaintiff and others, thereby enabling Defendants to continue preying on its employees.

73. Plaintiff has been unlawfully discriminated against, sexually harassed, humiliated, degraded, and retaliated against by Defendant Ruben in the workplace at End Zone.

74. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

75. As a result of the above, Plaintiff has been damaged in an amount to be determined at trial.

76. Upon information and belief, Defendants' actions and conduct were intentional and intended to harm Plaintiff.

77. As the Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount to be determined at trial.

78. Furthermore, Plaintiff also seeks attorney's fees, prejudgment interest, post-judgment interest, costs, disbursements, and expenses incurred in the prosecution of this action.

79. Finally, Plaintiff also requests such other relief as the Court may deem just, equitable, and proper to remedy to Defendants' unlawful employment practices.

### FIRST CAUSE OF ACTION
### (DISCRIMINATION IN VIOLATION OF TITLE VII AS TO ALL DEFENDANTS)

80. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

81. By the actions described above, among others, Defendants have <u>egregiously</u> discriminated against Plaintiff on the basis of her sex and gender, in violation of Title VII, by denying Plaintiff the same terms and conditions of employment available to others, including, but not limited to, by subjecting her to a hostile work environment and terminating her employment.

82. As a direct and proximate result of Defendants' unlawful conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

83. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages.

84. Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton acts and/or reckless indifference to Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

85. Plaintiff is also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## (DISCRIMINATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)

86. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87. New York State Executive Law § 296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

88. By the actions described above, and among others, Defendants engaged in an unlawful discriminatory practice in violation of the New York Executive Law because of Plaintiff's sex, subjecting Plaintiff to a hostile work environment.

89. Defendants discriminated against Plaintiff.

90. Defendants violated the above section.

91. That as a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

## THIRD CAUSE OF ACTION
## (HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)

92. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93. Pursuant to the New York State Executive Law, Plaintiff can establish a hostile work environment claim if she can show that was treated less well than other employees because of her protected class.

94. In the present case, Plaintiff was specifically singled out and sexually harassed by

Defendant Ruben, which was facilitated by the corporate Defendants and their agents and employees, including Defendant Dimitri and Defendant Yevgeniy.

95. Accordingly, Plaintiff was treated differently and unfairly by the Defendants because of her sex.

96. As a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**FOURTH CAUSE OF ACTION**
**(RETALIATION IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)**

97. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

98. By the foregoing acts and omissions, Defendants retaliated against Plaintiff on the basis of her protected activity in the form of complaining of the sexual harassment and discrimination she was being subjected to, in violation of the NYSHRL.

99. The retaliatory dismissal to which Plaintiff was subjected to would have dissuaded a reasonable employee in Plaintiff's position from reporting discrimination.

100. As described herein, all Defendants are liable for the unlawful retaliatory termination of Plaintiff, in violation of NYSHRL § 296(1).

101. Plaintiff was treated disparately from other similarly situated employees who had not complained of discrimination.

102. Defendants' unlawful retaliatory acts caused Plaintiff to suffer partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails.

**FIFTH CAUSE OF ACTION**

## (DISCRIMINATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)

103. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

104. The Administrative Code of the City of New York § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

105. Defendants engaged in an unlawful conduct in violation of the New York City Administrative Code Title 8, § 8-107(a) by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex and gender.

106. As a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## SIXTH CAUSE OF ACTION
## (HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)

107. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

108. Pursuant to the New York City Administrative Code, Plaintiff can establish a hostile work environment claim if she can show that was treated less well than other employees because of her protected class.

109. In the present case, Plaintiff was specifically singled out and sexually harassed by Defendant Ruben, which was facilitated by the corporate Defendants and their agents and employees, including Defendants Dimitri and Yevgeniy.

13

110. Accordingly, Plaintiff was treated differently and unfairly by the Defendants because of sex.

111. That as a direct result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW AS TO ALL DEFENDANTS)

112. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

113. As alleged herein, Defendants have retaliated against Plaintiff on the basis of her protected complaints about Defendant Ruben's sexual harassment and End Zone's culture of discrimination.

114. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

115. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress for which she is entitled to an award of damages.

116. Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## INJURY AND DAMAGES

117. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray that the Court enter judgment in her favor and against Defendants for the following relief:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. §2000-e et seq., and awarding Plaintiff a recovery for damages sustained;

B. that the Defendants engaged in unlawful employment practices prohibited by the New York State Human Rights Law, New York State Executive Law § 296 et seq., and awarding Plaintiff a recovery for damages sustained;

C. Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code Title 8, § 8-107 et seq., and awarding Plaintiff a recovery for damages sustained;

D. Awarding Plaintiff compensatory damages for her mental, emotional and physical injuries, distress, pain and suffering and injury to her reputation in an amount that exceeds the jurisdictional limit of all lower courts;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

G. Awarding Plaintiff such other relief as the Court may deem just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Forest Hills, New York
         March 2, 2021

**SHALOM LAW, PLLC**

/s/ *Jonathan Shalom*
Jonathan Shalom, Esq.
105-13 Metropolitan Avenue
Forest Hills, NY 11375
Jonathan@ShalomLawNY.com
(718) 971-9474 (office)

***ATTORNEYS FOR PLAINTIFF***