UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ILUMINADA ORTEGA,

Plaintiff,

-against-

CHAMPION ROOM BK, INC. d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE, and RUBEN YEGHOYAN, individually,

Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
21 CV 1125 (HG) (CLP)

**POLLAK**, United States Magistrate Judge:

On March 2, 2021, plaintiff Iluminada Ortega commenced this action against defendants Champion Room BK, Inc., d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge, Brooklyn Draft & Grill Inc. ("Draft Bar & Grill"), d/b/a Draft Barn, d/b/a/ End Zone Sports Bar & Lounge, Elite Holdings and Management Inc. ("Elite Holdings"), d/b/a Adrenaline Bar and Lounge, d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge, Yevgeniy Trofimchuk, Dimitri Yagudaev,[1] and Rueben Yeghoyan ("Yeghoyan"), individually, alleging that she had been subjected to a hostile work environment, sexual harassment, discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq.*, Section 296 of the New York State Executive Law ("NYSHRL"), and Section 8-107(1) of the Administrative Code of the City of New York ("NYCHRL"). (See ECF No. 1). On November 22, 2021, plaintiff filed her First Amended Complaint against Champion Room BK, Inc. and Yeghoyan. (ECF No. 35).

Currently pending before this Court is plaintiff's motion to file a Second Amended

[1] Defendants Trofimchuk and Draft Bar & Grill were dismissed from the action pursuant to a stipulation So Ordered by the court on June 21, 2021. (See ECF No. 21). Defendants Dimitri Yagudaev and Elite Holdings were dismissed by stipulation entered on July 12, 2021. (See ECF No. 24).

Complaint. For the reasons set forth below, the Court grants plaintiff's motion.

FACTUAL BACKGROUND

In her First Amended Complaint, plaintiff alleges that defendant Champagne Room BK, Inc., d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge ("End Zone"), is a New York corporation, operating at 28 Dooley Street, Brooklyn, N.Y. 11235. (Am. Compl.[2] ¶ 17). Defendant Ruben Yeghoyan is alleged to be an officer and agent of End Zone, employed in a supervisory capacity at End Zone. (Id. ¶¶ 20, 21). According to the First Amended Complaint, End Zone employed "fifteen (15) or more individuals for each working day in twenty or more weeks during the year 2020." (Id. ¶ 18).

Plaintiff alleges that in or about September 2020, she was hired as a hostess, waitress, and bartender at End Zone. (Id. ¶¶ 16, 24). Plaintiff alleges that during her tenure at End Zone, she was a "stellar employee," whose work performance was "above average," and she consistently received praise from the customers and patrons of End Zone. (Id. ¶¶ 25-27). Plaintiff alleges that beginning on her first day of employment, her supervisor, defendant Yeghoyan, "targeted Plaintiff, subjecting her to flagrant sexual comments and actions," including sexual demands and inappropriate comments about her appearance. (Id. ¶¶ 36, 37). Plaintiff alleges that despite expressing her disinterest in having any relationship with Yeghoyan, and despite his having a significant other, he persisted in his "constant, unreprimanded sexual harassment," subjecting her to a hostile work environment. (Id. ¶¶ 30, 31, 34, 38). Plaintiff further claims that End Zone was aware of and acquiesced to his harassment, and never took any steps to stop his conduct. (Id. ¶ 35).

On September 27, 2020, plaintiff was ordered to work an "'after-hours party'" at End

[2] Citations to "Am. Compl." refer to plaintiff's First Amended Complaint, filed November 22, 2021. (ECF No. 35).

Zone, which she alleges was in violation of then-Governor Cuomo's shutdown orders. (Id. ¶ 39). She alleges that many of the supervisors and managers, including defendant Yeghoyan, were at the party and Yeghoyan was pouring rounds of free shots to the other workers, including plaintiff. (Id. ¶¶ 40-41). Plaintiff alleges that by 3:00 a.m., she was intoxicated and Yeghoyan asked if plaintiff wanted to see the view from the rooftop of End Zone. (Id. ¶¶ 42-44). When plaintiff questioned whether they were allowed to go up there, Yeghoyan allegedly told her that it was fine and that he was her boss, telling her it was okay. (Id. ¶¶ 45-46). Fearing she would be fired if she did not go, plaintiff went with Yeghoyan to the rooftop, where he "attacked" her and forcibly raped her. (Id. ¶¶ 47-48). Plaintiff alleges that she begged him to stop and fought back, but he did not, "accidentally" leaving his used condom in plaintiff's pants. (Id. ¶¶ 49-54).

Following the attack, plaintiff alleges that she "battled waves of different emotions," and felt "extremely uncomfortable, frozen, and paralyzed" the next time she saw him while working at End Zone. (Id. ¶ 55). She claims that he, however, continued to flirt with her as if nothing had happened. (Id. ¶ 56). When he noticed that she was avoiding him, he confronted her, and she eventually worked up the courage to tell him that what he had done was not okay and that she did not want to be involved with him. (Id. ¶¶ 58-60). She claims that he became angry and began a "retaliatory campaign" against her, no longer scheduling her to work her normal evening shifts, but giving her mid-day shifts when End Zone was less busy, resulting in less wages and tips. (Id. ¶ 63). Then, on November 3, 2020, she received a text informing her that her services were no longer required at End Zone. (Id. ¶ 64). She claims that defendant Yeghoyan told her that she had been terminated because she "'forgot a couple of things'" the last time she waitressed, but plaintiff alleges that this was merely a pretext for Yeghoyan's harassment, discrimination and retaliation because she would not allow him to continue to sexually harass

her. (Id. ¶¶ 65-66).

Plaintiff alleges that End Zone and its agents and employees who were aware of the sexual misconduct, ignored the hostile work environment and failed to address Yeghoyan's behavior. (Id. ¶¶ 68-69). Plaintiff brings a claim of discrimination against the corporate defendant in violation of Title VII (First Cause of Action); claims of discrimination, hostile work environment, and retaliation against all the defendants in violation of the NYSHRL (Second, Third and Fourth Causes of Action); and claims of discrimination, hostile work environment, and retaliation against all the defendants in violation of the NYCHRL (Fifth, Sixth and Seventh Causes of Action).

## PROCEDURAL HISTORY

Following the filing of the First Amended Complaint on November 22, 2021 (see ECF Nos. 34-35), End Zone filed a Notice of Bankruptcy in the United States Bankruptcy Court for the Eastern District of New York on April 4, 2022, and an automatic stay was entered as to the corporate defendant. (See ECF No. 45).

By letter dated May 18, 2022, plaintiff sought to file a Second Amended Complaint, adding Sarkis Avoyants as a new defendant, and adding claims of minimum wage and overtime violations against defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the New York Labor Law ("NYLL") §§ 2, and 651, failure to pay spread of hours pay under NYLL §§ 190 *et seq*. and 650 *et seq*., and New York State Department of Labor regulation § 146-1.6, violations of the notice provisions of the NYLL §§ 195(1), (3), 198, and failure to keep records under New York Codes, Rules and Regulations § 146-2.1. (See ECF No. 47; Sec. Am. Compl.[3]). On August 19, 2022, this Court Ordered plaintiff to file a proper motion to amend

[3] Citations to "Sec. Am. Compl." refer to plaintiff's proposed Second Amended Complaint, filed May 18, 2022, ECF No. 47-1.

pursuant to Local Rule 7.1(a) of the Local Rules of the Eastern District of New York, which requires the moving party to submit a notice of motion, memorandum of law, and supporting affidavits or exhibits. (ECF No. 50). On September 9, 2022, plaintiff filed her motion, to which defendant Yeghoyan responded on September 30, 2022. (ECF Nos. 51-52, 54). Plaintiff then submitted a Reply Memorandum on October 7, 2022. (ECF No. 55).

## DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its complaint once as a matter of course within 21 days after serving the original complaint or within 21 days after a responsive pleading has been served. Blanchard v. Doe, No. 17 CV 6893, 2019 WL 2211079, at *3 (E.D.N.Y. May 22, 2019); Santagata v. Diaz, No. 17 CV 3053, 2019 WL 2164082, at *2 (E.D.N.Y. May 17, 2019). After that, amendments are allowed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires." Id. While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); see Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing in addition, "repeated failure to cure deficiencies by amendments previously allowed").

### B. Newly Added Defendant - Sarkis Avoyants

In her proposed Second Amended Complaint, plaintiff seeks to add an additional defendant, Sarkis Avoyants. She alleges that both defendants Yeghoyan and Sarkis Avoyants

were officers and agents of End Zone, employed in a supervisory capacity, with supervisory authority over plaintiff. (Sec. Am. Compl. ¶¶ 20-23; 25-28).

Rule 21 of the Federal Rules of Civil Procedure governs amendments to add new parties. Fed. R. Civ. P. 21; see Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 CV 7909, 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001) (citing Kaminsky v. Abrams, 41 F.R.D. 168, 170 (S.D.N.Y. 1966)); see also Noia v. Orthopedic Associates of Long Island, 93 F. Supp. 3d 13, 15 (E.D.N.Y. 2015). Rule 21 permits the addition of new parties "at any stage of the action and on such terms as are just." Sly Magazine v. Weider Publ. L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (citing Fed. R. Civ. P. 21). The same standards that are used when considering motions to amend under Rule 15 have been applied to motions under Rule 21. See id. (holding that "courts adhere to 'the same standard of liberality afforded to motions to amend under Rule 15'" (quoting Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 WL 58000, at *2)). As with Rule 15, courts may deny amendments under Rule 21 when there has been undue delay and the defendant can demonstrate prejudice. See, e.g., JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 CV 9116, 2009 WL 1357946, at *2-3 (S.D.N.Y. May 12, 2009) (describing the standard for denial of a motion to amend for undue delay or prejudice); Sly Magazine v. Weider Publ. L.L.C., 241 F.R.D. at 532.

In explaining why plaintiff now seeks to add Avoyants as a defendant, plaintiff's counsel submitted a Declaration in which he states that during the course of discovery, defendants produced documents which contained the name of Yeghoyan's business partner – Sarkis Avoyants. (Shalom Decl.[4] ¶ 3). According to the Declaration, when the original complaint in this action was filed, plaintiff did not know about Avoyants' connection to End Zone, and that is

[4] Citations to "Shalom Decl." refer to the Declaration in Support of Motion for Leave to File Amended Pleadings, submitted by Jonathan Shalom, Esq., dated September 9, 2022. (ECF No. 53).

why the complaint contained the names of numerous individual defendants whom plaintiff believed were involved in the business; she then withdrew their names once she received evidence to show that they were not involved in the business. (Id. ¶ 4).

In the proposed Second Amended Complaint, plaintiff has adequately alleged that Avoyants is an officer and agent of the corporate defendant, with supervisory authority over plaintiff. (Sec. Am. Compl. ¶¶ 25, 26, 28). In that role, he is alleged to have supervised and managed plaintiff and therefore would be responsible for the hostile work environment that she alleges as a result of Yeghoyan's sexual harassment, discrimination and retaliation. (Id. ¶¶ 27, 77, 78). Specifically, she alleges that "End Zone and its agents and employees, including all the Defendants named herein . . . were aware of Defendant Yeghoyan's egregious sexual misconduct, . . . failed to address same and deliberately turned a blind eye to it." (Id. ¶ 77). She further alleges that they not only intentionally ignored the hostile work environment but "orchestrated a course of discrimination and retaliation against Plaintiff to force her out of her job at End Zone." (Id. ¶ 78).[5]

Thus, plaintiff has adequately alleged claims against Avoyants and explained her reasons for not adding him to the complaint before now. Defendant Yeghoyan has not objected to the addition of Avoyants to the action, nor is there any demonstrable prejudice that would occur if he is added; discovery is ongoing and depositions have not yet been completed.

Accordingly, given that Rule 21 allows for the addition of new parties at any time and leave to add a new party is to be freely given, the Court respectfully recommends that plaintiff's motion to add defendant Avoyants to the action be granted.

[5] To the extent plaintiff seeks to add FLSA and NYLL claims against Avoyants, the Court addresses those amendments *infra*.

C. FLSA and NYLL Claims

Plaintiff also seeks to add wage and hour claims under the Fair Labor Standards Act and New York Labor Law, again claiming that she did not learn that she had not been paid properly until she was discussing her backpay calculations with her lawyer in the course of preparing a damages analysis for her discrimination and retaliation claims. (Shalom Decl. ¶ 7).

In opposing plaintiff's motion to add these wage and hour claims, defendant Yeghoyan has submitted a Memorandum of Law raising a number of issues. (Def.'s Mem.[6]). Defendant contends that not only has plaintiff failed to explain the delay in moving to add the FLSA and NYLL wage and hour claims for almost 15 months following the filing of the action, but also that out of the five new causes of action that plaintiff proposes, only the FLSA claim for minimum wage and overtime violations will allow plaintiff to maintain jurisdiction in federal court over defendant Yeghoyan. (Id. at 2-3). Specifically, defendant contends that because federal jurisdiction is currently predicated solely on the First Cause of Action – the Title VII claim, which only applies to the corporate defendant – and the corporate defendant End Zone has now filed for bankruptcy, the Court should dismiss the claims to allow the parties to proceed in state court. (Id. at 5).

D. Analysis

1) Delay and Prejudice

To determine whether an amendment would cause undue prejudice, courts consider whether the amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the

[6] Citations to "Def.'s Mem." refer to defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint, filed September 30, 2022, ECF No. 54.

dispute; *or* (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." In re "Agent Orange" Prods. Liab. Litig., 220 F.R.D. 22, 25 (E.D.N.Y. 2004) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). However, "[m]ere delay," without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. Id.; see also United States v. Cont'l Ill. Nat'l. Bank & Trust Co., 889 F.2d 1248, 1254-55 (2d Cir. 1989).

In anticipation of defendant's argument that there has been inordinate delay by plaintiff in now seeking to amend the complaint for a second time, plaintiff explains that she was unaware that she had not been properly paid until discussing her damage calculations with her attorney. (Pl.'s Mem.[7] at 4). According to counsel, when plaintiff learned that she had not been properly paid, she sought leave to amend to bring these wage and hour claims against all the defendants, including Avoyants.[8] (Id.). Thus, plaintiff argues that there has been no undue delay in seeking to add these claims. (Id. at 4).

Defendant also argues that he will be unduly prejudiced by the newly added FLSA and NYLL claims because they arise from different conduct than that which is alleged in the original pleadings. (Def.'s Mem. at 6). As a result, defendant complains that he was not given fair notice of the claims and will need to incur additional fees in responding to the claims and in dealing with additional discovery requests. (Id.)

In addition, defendant argues that the newly added claims are brought for an improper

[7] Citations to "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of Her Motion to Amend the Pleadings, dated September 9, 2022. (ECF No. 52).

[8] In his Declaration in Support of Motion for Leave to File Amended Pleadings, plaintiff's counsel states that plaintiff submits her proposed amended complaint, "which seeks to replead only four of the five causes of action dismissed by Judge Wolford without prejudice." (Shalom Decl. ¶ 9). It is unclear what exactly counsel is referring to when mentioning Judge Wolford or that certain causes of action were previously dismissed without prejudice. As defendants note, plaintiff's counsel is presumably referring to the Honorable Judge Wolford in the Western District of New York, but he does not preside over the instant case. (Defs.' Mem. at 1). Therefore, the Court assumes that paragraph nine was mistakenly included in the Shalom Declaration.

purpose – namely, to maintain subject matter jurisdiction in federal court now that the bankruptcy filing has stayed the federal Title VII claim, which is only alleged against the corporate entity. (Id. at 5). In response, plaintiff argues that the FLSA and NYLL claims are properly brought valid claims. (Pl.'s Mem. at 4-5). She argues that the claims are not time-barred because she was employed until November 2021, and thus, she would be able to file a separate suit, alleging FLSA claims, even if she was not permitted to amend her complaint in this action. (Id.) Thus, it would result in judicial inefficiency if the current motion was denied because there would be a completely separate case filing. (Id. at 5). Therefore, plaintiff argues that there has been no undue delay or bad faith in seeking to amend at this time.

Having reviewed defendant's objections, the Court finds that while there has been a delay of 14 months between the filing of the initial complaint and the proposed Second Amended Complaint, plaintiff has provided a plausible explanation for why she did not bring the wage and hour claims sooner. Moreover, defendant's claim of prejudice does not rise to the level that would warrant denial of a motion to amend. Any amendment to a pleading requires additional attorney time to respond to the new pleadings and often the addition of new claims requires supplemental interrogatories and document requests. If this alone were enough to constitute prejudice, amendments would be rare. In this case, discovery is still ongoing, depositions have not been completed and any additional discovery can likely be completed in a reasonable time period. Moreover, as plaintiff notes, even if the amendments were disallowed and plaintiff was forced to bring a separate action in either federal or state court, defendants would still be required to expend attorney time and conduct discovery. (Pl.'s Mem. at 5). Finally, the Court finds no basis to conclude that plaintiff is acting in bad faith or with an improper motive in seeking to add these wage and hour claims, and they should therefore be added as long as there

is federal jurisdiction in this Court otherwise.

2) Defendant Yeghoyan's Arguments Regarding Subject Matter Jurisdiction

Defendant Yeghoyan suggests that now that the Title VII claim against End Zone has been stayed as a result of the bankruptcy filing, the case against Yeghoyan should be "remand[ed]" to state court.[9] (Def.'s Mem. at 5). Essentially, Yeghoyan argues that because there are no longer any federal claims pending against him individually, the case should be dismissed and tried in state court.[10] Defendant further argues that the addition of Sarkis Avoyants as a defendant should not prevent dismissal because plaintiff could still seek to add him as a defendant in the state court action. (Id.) Although defendant fails to cite any authority in support of his argument, he urges the court not to exercise supplemental jurisdiction over the remaining claims.

a) Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact" as claims over which the court has original jurisdiction. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006). Courts "may decline to exercise supplemental jurisdiction" under certain circumstances, including when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the

[9] The Courts notes that defendant argues specifically that plaintiff is seeking to amend the Complaint for the improper purpose of preventing "remand" to state court. The Court does not believe "remand" would be the proper action here because the case did not originate in state court and was never removed to this court.

[10] Defendant Yeghoyan has not formally moved to dismiss plaintiff's NYSHRL and NYCHRL claims for lack of subject matter jurisdiction.

remaining state-law claims." Tortorici v. Bus-Tev, LLC, No. 17 CV 7507, 2021 WL 4177209, at *9 (S.D.N.Y. Sept. 14, 2021) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)) (internal quotation marks omitted). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Li v. Cheng, No. 10 CV 4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 21, 2012) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. at 350) (internal quotation marks omitted).

However, "whether or not to exercise or decline is a doctrine of discretion, not of plaintiff's right." Heron v. Medrite Testing, LLC, No. 21 CV 9471, 2022 WL 1214179, at *5 (S.D.N.Y. Apr. 25, 2022) (internal quotation marks and citated omitted). Therefore, a court "may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." Wright v. Musanti, 887 F.3d 577, 582 n.2 (2d Cir. 2018) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996) (internal quotation marks omitted); see also Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399-400 (2d Cir. 2017) (explaining that so long as a district court dismisses federal law claims for failure to state a claim, as opposed to for lack of subject matter jurisdiction, "the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state-law claims"). After considering factors such as judicial economy, convenience, fairness, and comity, a court thus may use its discretion to exercise supplemental jurisdiction over those remaining state-law claims. See Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d at 1192 (concluding that the district court did not abuse its discretion in exercising supplemental jurisdiction over state-law claims because the

court and parties invested significant energy preparing for trial and the federal claim was dismissed close to the trial date).

In her original Amended Complaint, plaintiff invoked the federal question jurisdiction of this Court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq*. but only as against defendant End Zone because individual defendants may not be held liable under Title VII. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). Here the proceedings as to End Zone have been stayed due to its bankruptcy filing. However, despite defendant's insinuation otherwise, the stay as to the claims against defendant End Zone does not operate as a dismissal of plaintiff's federal claim. Depending on the outcome of the bankruptcy proceeding, plaintiff could in fact proceed against the corporate defendant at some point; dismissal of the Title VII claim is not a foregone conclusion. Notwithstanding the stay as to defendant End Zone, plaintiff's first Amended Complaint remains the operative complaint, and because it contains the federal Title VII claim, the Court respectfully recommends that the court continue to exercise supplemental jurisdiction over plaintiff's NYSHRL and NYCHRL claims. Cf. Warren v. Mariner Fin., LLC, No. 20 CV 4193, 2021 WL 5232253, at *2, n.1 (2d Cir. 2021) (summary order) (holding that the district court did not abuse its discretion in continuing to exercise supplemental jurisdiction over state law claims in deciding a motion to dismiss because the operative complaint, which had not yet been dismissed, contained a federal claim).

Additionally, plaintiff's state law discrimination claims derive from a common nucleus of operative fact as the Title VII claim. Common nucleus of operative fact determination turns on "whether the facts underlying the federal and state claims substantially overlapped . . . or the federal claim necessarily brought the facts underlying the state claim before the Court." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d at 335 (internal quotation marks and

brackets omitted). Here, plaintiff brings a Title VII claim for discrimination, in addition to claims for discrimination, hostile work environment, and retaliation under both the NYSHRL and the NYCHRL. Her claims are all derived from a common nucleus of operative fact, i.e., the allegedly discriminatory conditions of employment and the allegedly discriminatory termination.

Moreover, retaining the NYSHRL and NYCHRL claims would serve the interests of judicial economy, convenience, fairness, and comity. Here, severing the state law claims would force plaintiff to litigate in both state and federal court. Given that the stay as to defendant End Zone may be eventually lifted, proceeding to litigate the NYSHRL and NYCHRL claims in state court and the Title VII claims in this court would be a waste of judicial resources since the claims derive from a common nucleus of operative fact, and would therefore likely involve common evidence. See Kegun Chen v. Oceanica Chinese Rest., Inc., No. 13 CV 4623, 2018 WL 3973004, at *4 (E.D.N.Y. Aug. 20, 2018). Moreover, the parties and the Court have already expended a significant amount of resources on these claims in this action, which was commenced over two years ago. Although the case is not yet ready for trial, the parties have already exchanged discovery and participated in frequent motion practice.[11] Cf. Bangladesh Bank v. Rizal Commer. Banking Corp., No. 19 CV 983, 2020 WL 1322275, at *5 (S.D.N.Y. Mar. 20, 2020) (dismissing the only federal claim for failure to state a claim and declining to exercise supplemental jurisdiction over the remaining state law claims because the case is in its infancy).

[11] Additionally, the state law claims do not raise unsettled questions of New York Law. Cf. Astra Media Group, LLC v. Clear Channel Taxi Media, LLC, 414 Fed. Appx. 334, 337 (2d Cir. 2011) (finding that the district court should have exercised its discretion to remand the state law claims that raise unsettled questions of state law).

As to plaintiff's state-law wage and hour claims, plaintiff does not respond directly to the question of what should occur in the event that her FLSA claim is not allowed to proceed.[12] However, because the Court has granted plaintiff's request to add her FLSA claim, the Court does not need to reach the issue of jurisdiction over her NYLL claims, which derive from the same common nucleus of operative fact as the FLSA claim. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (stating that "the NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices"); see also Kegun Chen v. Oceanica Chinese Rest., Inc., 2018 WL 3973004, at *3 (noting that "in cases with overlapping FLSA and NYLL claims, federal courts generally exercise supplemental jurisdiction"); cf. Fallon v. 18 Greenwich Ave., LLC, No. 19 CV 9579, 2021 U.S. Dist. LEXIS 54640, at *19 (S.D.N.Y. Mar. 23, 2021) (exercising supplemental jurisdiction over a non-FLSA plaintiff's NYLL claims, finding the common nucleus test satisfied).

## CONCLUSION

In light of the foregoing, the Court grants plaintiff's motion to amend in its entirety. Plaintiff is to file her Amended Complaint on the docket by May 5, 2023.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: May 1, 2023
Brooklyn, New York

[12] She argues that she could simply bring a new case in federal court and raise the same claims that she is attempting to raise here and that she would be prejudiced if not allowed to add these claims to the existing case. (ECF No. 55 at 2-3). She also contends that even if the case were brought in state court, one of the other defendants might seek to remove it to federal court. (Id. at 1).

/s/ Cheryl L. Pollak

---

CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York