# The Fast Law Firm, P.C.

F|L

521 Fifth Avenue, 17 Floor | New York, NY 10175 | Phone: (212) 729-9494

September 8, 2023

<u>Via ECF</u>
Hon. Magistrate Judge Cheryl L. Pollak
U.S. District Court
Eastern District of New York
225 Cadman Plaza E
Brooklyn, NY 11201

Re:   **Ortega v. Yeghoyan et al**, 21-cv-01125 (HG)(CLP)
Defendant's Opposition to Plaintiff's Motion to Compel Buccal Swab

Dear Judge Pollak:

My Firm represents Ruben Yeghoyan on the above-captioned matter. I submit this letter in opposition to Plaintiff's Motion to Compel a Buccal Swab from Mr. Yeghoyan [ECF No. 71]. Plaintiff alleges that on September 27, 2020, she was violently raped by Defendant Yeghoyan. She further alleges that she kept a condom from the alleged attack, allegedly containing a DNA sample from Mr. Yeghoyan. Plaintiff's counsel, Jonathan Shalom, Esq. does not provide any information about chain of custody, location of the sample, storage condition or why the testing is being sought now, three years since the .

On August 30, 2023, I was advised by Plaintiff's Counsel that Plaintiff would be filing a motion to compel a DNA sample from Mr. Yeghoyan. Mr. Shalom confirmed that the biological sample from the condom was not tested by any lab. In that conversation, I advised Mr. Shalom that prior to filing a motion to compel a DNA sample, the Plaintiff must first get the exemplar tested by a lab. In turn, the lab must confirm that the sample will yield a DNA profile that is suitable for direct comparison with Mr. Yeghoyan's exemplar if the Court were to order a buccal swab.

I further advised Plaintiff's counsel that there are several reasons that would yield the sample untestable - such as an insufficient concentration of DNA or multiple DNA profiles complexity of which makes DNA testing, even for purposes of direct comparison, unsuitable. Plaintiff's counsel advised that he was applying for a motion to compel prior to any testing being conducted.

**I. Plaintiff's Motion to Compel a DNA Sample Should Be Denied Because She Has Failed to Establish That the DNA Evidence Is Relevant or That There is a Reasonable Possibility of a Match**

To compel the production of a DNA sample in civil discovery, Plaintiff has the burden of satisfying the three prong test delineated in *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002), by establishing that: "(1) the DNA evidence is relevant; (2) there is a reasonable possibility that testing will yield a match; and (3) the privacy rights of the individual being tested will not be unduly affected." *Davis v. City of New York*, 2019 WL 3252747, at *2 (E.D.N.Y., 2019). However, in the Motion to Compel, Plaintiff omits several key factors that were considered by the court in

*McGrath* which strongly weigh against granting the instant motion to compel a sample of Mr. Yeghoyan's DNA.

### A.      Reasonable Possibility of a Match

The Plaintiff falls woefully short of making a prima facie showing of a reasonable possibility that the DNA testing will yield a match. To make a prima facie case of a reasonable possibility of a match, a plaintiff must show that there is "(1) something to test [defendants'] DNA sample[s] against and (2) some factual basis for believing that a match may be made." *Davis* at *2 (internal quotations omitted).

#### 1.      A Testable Reference Sample

Plaintiff fails entirely to account for the threshold issue in *McGrath*'s analysis of this prong, that is "that the evidence to be tested…actually contains a male and a female DNA profile that can be tested against individual DNA samples." *McGrath* at 61. In *McGrath*, the movant submitted a letter to the court from LabCorp, a clinical laboratory, stating that "preliminary testing of the blanket revealed the presence of blood, and the presence of a major DNA profile consistent with a male source and a major DNA profile consistent with a female source," (*id*. at 62 (internal quotations omitted)) as well as that "the DNA profiles can be compared to any reference sample submitted." *Id*. (internal quotations omitted). Likewise, in *D'Angelo v. Potter*, 224 F.R.D. 300 (D. Mass. 2004), another case cited by Plaintiff, prior to moving to compel a DNA sample, a forensic chemist had tested the reference sample and concluded that it contained semen. *Id*. at 303 ("Two of the swabs that the forensic chemist took from the boiler room proved positive for semen"). So too in *Davis*, where the *pro se* movant obtained preliminary testing of the exemplar sample at his own expense. *Davis* at *1. Thus, in each case cited by Plaintiff, the movant had established that there was an exemplar sample that could be tested against. *See McGrath* at 61 ("Implicit in each ruling, of course, is the understanding that a DNA sample is meaningless in a vacuum—*the sample must be compared to something to determine if the two DNA profiles match*, and there must be some demonstrable possibility that a match will be found.") (emphasis added).

Here, Plaintiff has failed to provide *any* evidence to support a finding that this condom contains the presence of a male DNA source, much less one that can be compared to any reference sample submitted. Accordingly, the Motion to Compel should be denied on these grounds alone.

#### 2.      The Factual Basis for Believing a Match Will Be Made

Plaintiff has also failed to establish *any* factual basis for believing that a match may be made. As the court in *Davis* noted, "while the reasonable possibility of a match standard seems, on its face, to imply a low burden of proof…courts applying it have required a *fairly robust factual showing prior to ordering DNA testing*." *Davis* at *3 (emphasis added). Federal courts applying the *McGrath* test have required that "there [is] some factual "plus" factor linking the putative subject of the DNA testing to the comparator evidence, beyond simply the movant's assertion that a match would be made." *Id*. This "factual plus" factor is almost always "the presence of biological matter in an unexpected location, combined with testimony linking it to the individuals to be tested, increas[ing]

2

the likelihood that a match would be made beyond the level at which it would have been based merely on the movant's assertions." *Id*.

For instance, in *McGrath*, the exemplar evidence was taken from a blanket that had been stained with blood and semen, the movant had previously "testified at the hearing as to the specific incident that allegedly resulted in the semen and blood stains on the blanket," and the opposing party had not "take[n] the stand to refute any of the details that [the movant] presented." *McGrath* at 62. Similarly, in *D'Angelo*, the movant had testified that she had been raped in a boiler room of a postal office, the exemplar evidence was semen found in that same boiler room and the alleged rape had occurred "less than a month before the swabs were taken." *D'Angelo* at 303.

Moreover, in *D'Angelo*, the court noted that there was "nothing in the record in the instant case to indicate that other persons used the room for sex during the interval, or that the boiler room was commonly used for such purposes." *Id*. Lastly, in *Davis*, the court found that the movant did not meet their burden of establishing a reasonable possibility of a match where the exemplar evidence was male DNA found on dollar bills that the movant alleged were handled by the opposing parties during a robbery. *Davis* at *3 ("the preliminary testing has merely revealed the presence of male DNA on an object—currency—that one would normally expect to harbor human DNA…While plaintiff attempts to portray the presence of male DNA on the currency as a "plus" factor analogous to the blood on the blanket in *McGrath*, the court instead sees it as a "neutral" factor, given the nature of currency as an object that is frequently handled"). Notably, the court in *Davis* also found that the extended passage of time between the acts of the non-moving parties which were alleged to have imparted the DNA on the currency and the moving party's request for DNA testing was a "minus facto[r], which decrease[d] the likelihood of a match." *Davis* at *4 (internal quotations omitted).

Here, the only factual allegations that the Plaintiff offers in support of the Motion to Compel are that (1) she was raped by Mr. Yeghoyan on September 27, 2020; (2) that "she is in possession of the condom Yeghoyan used that night"; and (3) "there is no way Plaintiff can have in her possession a used condom containing Yeghoyan's semen were her allegations of rape untrue" because "Yeghoyan does not allege as an affirmative defense that Plaintiff welcomed any sexual conduct by Yeghoyan; he simply denies that it occurred." Plaintiff's Motion to Compel. ECF No. 71. Plaintiff disregards that consent is listed as Defendant Yeghoyan's Fourth Affirmative Defense in the Answer to the Third Amended Complaint.

These are precisely the types of bare-bones assertions that courts have held to be insufficient to establish a reasonable possibility of a match. The Defendant submits that a condom is "an object . . . that one would normally expect to harbor DNA," and not an "unexpected location" such as a boiler room or a specific blanket that has been the subject of the movant's prior testimony. Furthermore, factual allegation (3) is entirely incorrect and this is easily discernible by reviewing the pleadings in the instant matter. The *only* denial Mr. Yeghoyan has made relating to sexual contact with the Plaintiff is that he did not rape the Plaintiff on September 27, 2020. Thus, the Plaintiff's premise that this condom may be the sole determinant in Mr. Yeghoyan's liability is completely without merit. Lastly, Plaintiff makes no mention of the "minus factor" of the passage of time since alleged events of September 27, 2020, almost three years ago. Similarly, Plaintiff offers no information about the condition of the condom, condition of alleged biological sample, chain of custody or storage conditions for the past three years.

Though not specifically discussed in the existing case law, the Defendant submits that Plaintiff's failure to present to the Court any details as to: (1) how the biological material has been stored over the last nearly three years; (2) the reason why this testing is now being sought at this point in the litigation; and (3) why Plaintiff did not take the initiative to obtain preliminary testing of any biological material knowing full well the requirements of this prong of the *McGrath* test, is unexplainable. Those concerns, in conjunction with Plaintiff's failure to establish any nexus whatsoever between this condom, Mr. Yeghoyan and the purported events of September 27, 2020 apart from Plaintiff's bare bones assertions are additional grounds on which the Motion to Compel should be denied.

## II. Conclusion

Wherefore, Plaintiff's Motion to compel a buccal swab from Mr. Yeghoyan [ECF No. 71] should be denied in its entirety.

Respectfully Submitted,

s/ Elena Fast
Elena Fast, Esq.
Counsel for Ruben Yeghoyan
The Fast Law Firm, P.C.
521 Fifth Avenue, 17 Floor
New York, NY 10175
Phone: (212)729-9494
Email: elena@fastlawpc.com