# Sage Legal LLC

**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

July 10, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Cheryl L. Pollak, U.S.M.J.
225 Cadman Plaza East
Courtroom 13B South
Brooklyn, NY 11201-1804

   *Re:*  **Ortega v. Champagne Room BK, Inc.,** *et al.*
       <u>Case No.: 1:21-cv-1125 (NGG) (CLP)</u>

Dear Judge Pollak:

  This office represents the Plaintiff Iluminada Ortega (hereinafter the "Plaintiff") in the above referenced case. Plaintiff writes to respectfully submit the instant motion for settlement approval because it constitutes a fair and reasonable resolution of a *bona fide* dispute in accordance with, *inter alia*, the Fair Labor Standards Act.

  The parties have agreed to a negotiated Settlement Agreement (the "Agreement") which Plaintiff submits *in camera* because the terms of the agreement are confidential. Plaintiff requests that the Court approve the settlement pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), <u>cert</u>. <u>denied</u>, 136 S. Ct. 824 (U.S. 2016).

  Plaintiff submits that although the settlement amount is less than what the Plaintiff would be entitled to if she prevailed on all of claims at trial, the settlement is fair, as discussed herein. This agreement was reached after lengthy negotiations between counsel.

  Plaintiff alleges not to have received the required statutory wages notices and statements under New York State Law. However, as discussed at the April 25, 2024 hearing, the period of time Plaintiff worked was significantly short. The potential range of recovery for Plaintiff depends ultimately on the hours worked, the terms of their employment and the manner in which to calculate damages that may or may not be endorsed by a trier of fact after trial, or by a judge if it is determined that the manner in which damages are to be calculated is a matter of law.

  Plaintiff previously declared that she could have been entitled to upwards of $30,500.00 in damages and other causes of action if a trier of fact had endorsed Plaintiff's recollections of hours of compensable work. <u>See</u> ECF Docket Entry <u>76-3</u>. After carefully explaining the options going forward and the risks of protracted litigation combined, Plaintiff has chosen to accept $20,000.00 to resolve her claims against Defendants Yeghoyan and Champage Room BK Inc.

  The parties' settlement agreement contains a mutual general release provision. Whereas here, plaintiff is no longer employed by any the settling defendants and does not wish to be employed by any Defendant any more, courts have routinely found agreements with such provisions fair and reasonable pursuant to <u>Cheeks</u>. <u>See</u>, <u>e.g.</u>, <u>Grullon v. Justin Pharmacy Inc.</u>, No. 1:20-CIV.-6122 (OTW), 2021 WL 76386, at *3 (S.D.N.Y. Jan. 8, 2021) (when the plaintiff is a

former employee with no ongoing relationship with the employer, courts in this District have approved a general release, if the release is mutual) (citing Strauss v. Little Fish Corp., No. 1:19-CIV.-10158 (LJL), 2020 WL 4041511, at *5-6 (S.D.N.Y. July 17, 2020) ("Such a broad mutual general release operates as a walk away provision: it permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.") (citing cases)); see also Small v. Stellar Mgmt. Ltd., No. 1:20-CIV.-2540 (SDA), 2020 WL 7890748, at *1 (S.D.N.Y. Oct. 21, 2020) ("In the present case, the Court finds that mutual general releases are acceptable because Plaintiff no longer works for Defendant; Plaintiff was represented by experienced counsel; and the release, although it extends to individual and entities other than Defendants, does so only to the extent that such persons or entities are acting on behalf of or in privity with Defendants and to claims arising from their activities as such"); Souffrant v. 14-15 Mertens Place Corp., No. 19-CIV.-05482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (approving agreement when modified to ensure releases extended only to those acting on behalf of or in privity with the parties and was limited to claims arising from actions taken in such capacities); Khan v. Young Adult Inst., Inc., No. 18-CIV.-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("General releases are permissible in FLSA settlements where plaintiff is no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual."); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-CIV.-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("[T]here is nothing inherently unfair about a release of claims in an FLSA settlement"). As such, even though the settlement agreement contains general releases, not specific to wage and hour claims, the parties respectfully submit that this provision is fair and reasonable, because the releases apply to both plaintiff and defendants. See also, Souza v. 65 St. Marks Bistro, No.15-CV-327(JLC), 2015 WL 7271747, at *5 n.8 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will also ensure that an employer is not simply leveraging 'a release from liability unconnected to the FLSA,' but that any claim that the employer might have against the plaintiff (such as theft or destruction of property, in the case of a restaurant worker) would also be released."); Weng v. Tamp WRest., Inc., No. 15CV08167PAEBCM, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (mutual general releases approved in FLSA settlement)." A mutual general release is therefore appropriate in this case.

Settlement
The parties have agreed to settle this action for the total sum of $20,000.00. The total costs of this action are $985.60 in costs of the action ($402.00 filing fee, $583.60 for service of process against various Defendants). Plaintiff received $13,000.00 from the settlement after counsel's fees and costs of $7,000.00, discounted from $7,652.27 ($6,666.66 as one-third of the settlement plus $985.60 in costs).

The settlement fund represents a significant sum of money for Plaintiff and reflects a fair compromise of her respective best-case scenario in light of the risks of proceeding to trial, especially given Defendant Yeghoyan's persistent penchant of poverty.

Fairness
 "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" See Cheeks, (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)).

Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." See Wolinsky v. Scholastic, 900 F. Supp. 2d at 225 (quoting Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to Plaintiff. Plaintiff has been represented by experienced counsel throughout this lawsuit and he has made an informed decision to settle the action at this stage of litigation without the risk of a contrary finding of fact at trial on either her hours worked or term of her employ, including the emotional toll of recounting the facts supporting her other claims.

Moreover, courts often recognize that settling a claim sooner rather than later is often valuable in its own right. See Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.").

Attorneys' Fees Are Fair and Reasonable

Under the settlement, Plaintiff's counsel received $7,000.00 from the settlement fund as attorneys' fees and costs, subject to review and approval of the court. This represents one third of the recovery and costs in this litigation, plus costs, with a discount, in keeping with the Plaintiff's agreement with her counsel.

With respect to fees, a court may calculate a reasonable attorneys' fee either by determining the so-called 'lodestar' amount or by awarding a percentage of the settlement. See McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). "However, 'the trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case […] the percentage method […] avoids the lodestar method's potential to create a disincentive to early settlement." See Hyun v. Ippundo USA Holdings, 14-cv-8706 (AJN), 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. Mar. 24, 2016) (internal citations omitted). Courts in this district generally find 33.3% of a settlement allocated for attorneys' fees to be reasonable when negotiated as part of a one-third contingency fee arrangement. See Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012). "[C]ourts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." See Oxley v. Excellent Home Care Services, LLC, 18-cv-2374-RJD-CLP, (EDNY Jan. 8th 2020) (approving 1/3 percentage of the fund in FLSA matter). "[A] one-third contingency fee is a commonly accepted fee in this Circuit." See Calle v. Elite Specialty Coatings, Inc., No. 12-CIV.-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13-CIV.-3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit."); Rodriguez-Hernandez v. K Bread Co. Inc., No. 15 CV 6848, 2017 WL 2266874, at *7 (finding "30% of the total settlement [to be] a reasonable and appropriate attorney's fee award).

3

The undersigned here has such an arrangement with each Plaintiff for a 33.3% contingency fee net of costs. See generally Miller v. United Parcel Serv., Inc., No. 20-CV-05244n(JMW), 2023 WL 2214107, at *4 (E.D.N.Y. Feb. 24, 2023) ("Following Fisher, courts in this district have independently found an attorney fee representing one-third the settlement amount reasonable, where the attorney provided documentation of the signed retainer agreement between the attorney and plaintiff")   "We will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many courts do." See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5, 2022). We decline to perform a "lodestar cross check" because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the "lodestar" for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A "lodestar cross check" is of course appropriate, and indeed required, where a court is being asked to award a percentage of a common fund in attorney's fees. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014).

Here, however, there is no common fund created by the settlement. Instead, the plaintiff and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney's fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client."). Therefore, in cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." See Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under Cheeks whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected.  Instead, we must independently judge whether the percentage contingency arrangement is itself "reasonable." We believe such an analysis, however, must be conducted *ex ante* --- not in light of the actual number of hours expended after the contingency fee arrangement was made. Certainly, we would not find "reasonable" any contingency fee arrangement that was itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339, 998 N.Y.S.2d 698, 23 N.E.3d 965 (N.Y. 2014) (contingency fee arrangement enforced in the absence of "incompetence, deception or overreaching" or if "void at the time of the inception"). It is certainly possible that a contingency fee arrangement in a particular case might be *ex ante* unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Here, however, there is no indication of any such overreaching or of any deceptive conduct. As to the amount of the contingent payment, we would have no compunction about disapproving a percentage amount that was outside of the range of

4

what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or questionable. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." See Garcia v. Atlantico Bakery Corp., 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016).

Thus, regardless of the number of hours actually spent by counsel on this case, the Court should find that the contingent fee arrangement was fair to plaintiffs and reasonable at the time it was made. Accordingly, the Court approves the attorney's fees and costs in the settlement agreement as they are consistent with the retainer agreement agreed to by plaintiff." See Almanzar v. Silver Star Properties Corp., No. 23 CIV. 819 (GWG), 2023 WL 6979460, at *2–3 (S.D.N.Y. Oct. 24, 2023).

      Moreover, in Fish v. SD Prot. Inc., 948 F.3d 593 (2nd Cir. 2020), the Second Circuit held that the proportionality of an attorney fee award to the plaintiff's recovery should not be viewed by the district court as an "outcome determinative factor in evaluating the reasonableness" of the fee and further emphasized the importance in incentivizing the plaintiffs' bar to take small and/or difficult cases.

      Based on the foregoing, this Court should approve the settlement agreement as fair and reasonable. Plaintiff thanks this honorable Court for its time and attention to this case.

Dated: Jamaica, New York
      July 10, 2024                           Respectfully submitted,

                                                        **SAGE LEGAL LLC**
                                                        */s/ Emanuel Kataev, Esq.*
                                                        Emanuel Kataev, Esq.
                                                        18211 Jamaica Avenue
                                                        Jamaica, NY 11423-2327
                                                        (718) 412-2421 (office)
                                                        (917) 807-7819 (cellular)
                                                        (718) 489-4155 (facsimile)
                                                        emanuel@sagelegal.nyc

                                                        *Attorneys for Plaintiff*
                                                        *Ortega Illuminada*

**VIA FIRST CLASS MAIL**
Sarkis Avoyants
233 Avenue W                                     **VIA ECF**
Brooklyn, NY 11223                          All counsel of record