**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ILUMINADA ORTEGA,                                  :
                                                   :        Case No.: 1:21-cv-1125 (NGG) (CLP)
                        Plaintiff,                  :
                                                   :        **FOURTH AMENDED**
            v.                                      :        **COMPLAINT**
                                                   :
CHAMPAGNE ROOM BK, INC d/b/a DRAFT                  :        **JURY TRIAL DEMANDED**
BARN d/b/a END ZONE SPORTS BAR &                   :
LOUNGE, RUBEN YEGHOYAN, and SARKIS                 :
AVOYANTS,                                           :
                                                   :
                        Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff, ILUMINADA ORTEGA, (hereinafter "Ms. Ortega" or the "Plaintiff") by and through her attorneys, SAGE LEGAL LLC & SHALOM LAW, PLLC, complaining of Defendants CHAMPAGNE ROOM BK, INC d/b/a DRAFT BARN d/b/a END ZONE SPORTS BAR & LOUNGE; (hereinafter "End Zone" or the "Corporate Defendant") RUBEN YEGHOYAN (hereinafter "Yeghoyan"), and SARKIS AVOYANTS (hereinafter "Avoyants") (Yeghoyan and Avoyants collectively hereinafter the "Individual Defendant") (the Corporate Defendant and the Individual Defendants collectively hereinafter the "Defendants"), pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure ("Rules" or "Rule"), and upon information and belief states as follows:

**PRELIMINARY STATEMENT**

1.  This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' willful violation of the Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e–2, *et seq*. ("Title VII"), § 296 of the New York State Executive Law (the "New York State Human Rights Law" or the "NYSHRL"), and § 8-107(1) of the Administrative Code of City of New York (the "New York City Human Rights Law" or the "NYCHRL"), as well as Defendants' willful violations of the wage-and-hour laws under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

2.    Ms. Ortega is seeking damages to redress the injuries suffered as a result of being employed in a hostile work environment where she was repeatedly sexually harassed and **raped**, as well as discriminated and retaliated against by Defendants on the basis of her gender.

3.    Ms. Ortega further complains of retaliation for exercising her statutory rights under Title VII, the NYSHRL, and the NYCHRL and complaining of sexual harassment, discrimination, and retaliation within the workplace.

4.    In addition, Ms. Ortega complains of violations of the wage-and-hour laws in that she was not paid at least the minimum wage for all hours worked and overtime compensation for hours worked in excess of forty (40) hours per week.

5.    This institutional indifference, ignorance of the law, outright hostility, and retaliation to the rights and dignity of a female employee has created and fostered a permissive and toxic culture at End Zone, for which Defendants are liable to the fullest extent of the law.

### JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

7.    The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions.

8.    The Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367, as the facts supporting these claims also arise from the same nucleus of events forming the basis for the federal causes of action.

9.    Venue is appropriate under 28 U.S.C. § 1391(b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

10.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## ADMINISTRATIVE PREREQUISITES

11.  A Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination and retaliation in violation of Title VII has been filed by Plaintiff on January 7, 2021.

12. The EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue"), received on February 25, 2021.

13.  Plaintiff has therefore satisfied any and all other prerequisites to the filing of this action.

## PARTIES

14. Plaintiff was and still is a resident of the County of Kings in the State of New York.

15. Plaintiff's "sex" is female, which is protected from discrimination and retaliation by the NYSHRL § 292.

16. Plaintiff's "sex" is also protected from discrimination and retaliation within the meaning of the NYCHRL § 8-102.

17. At all times relevant, Plaintiff was hired and employed as a hostess, waitress, and bartender at corporate Defendants' restaurant, End Zone, located at 28 Dooley Street, Brooklyn, New York, 11235.

18. At all times herein relevant, the Corporate Defendant has been a for-profit entity duly incorporated under New York law and operating at 28 Dooley Street, Brooklyn, New York 11235.

19. Upon information and belief, the Corporate Defendant employed fifteen (15) or more employees at all relevant times herein.

20. Upon information and belief, the Corporate Defendant's annual gross volume of sales made or business done is not less than $500,000.00 at all relevant times.

21. At all times relevant, the Corporate Defendant has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

22. At all times relevant, Plaintiff was engaged in commerce and/or production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

23. At all times herein relevant, Defendant Yeghoyan was and is a resident of the State of New York.

24. At all times here Defendant Yeghoyan was an officer and agent of the Corporate Defendant.

25. Additionally, Defendant Yeghoyan was employed in a supervisory capacity at the restaurant, End Zone, at 28 Dooley Street, Brooklyn, New York, 11235.

26. Further, Defendant Yeghoyan supervised and managed Plaintiff.

27. Accordingly, Defendant Yeghoyan was at all relevant times an agent of the Corporate Defendant and had supervisory authority over Plaintiff.

28. At all times herein relevant, Defendant Avoyants was and is a resident of the State of New York.

29. At all times here Defendant Avoyants was an officer and agent of the Corporate Defendant.

30. Additionally, Defendant Avoyants was employed in a supervisory capacity at the restaurant, End Zone, at 28 Dooley Street, Brooklyn, New York, 11235.

31. Further, Defendant Avoyants supervised and managed Plaintiff.

32. Accordingly, Defendant Avoyants was at all relevant times an agent of the Corporate Defendant and had supervisory authority over Plaintiff.

## FACTUAL BACKGROUND

33. Plaintiff was initially hired by End Zone as a hostess, waitress, and bartender in or about September 2020.

4

34. Plaintiff was paid in cash at the hourly rate of ten dollars per hour for all hours worked.

35. However, Plaintiff routinely worked in excess of forty (40) hours per week.

36. For example, Plaintiff worked approximately sixty (60) hours during the first week of November 2020 and was only paid $600.00 for that week as part of her regular compensation.

37. In addition, Defendants routinely misappropriated Plaintiff's tips by shortchanging her at the end of each shift.

38. Plaintiff was therefore paid less than the minimum wage and Defendants failed to pay Plaintiff overtime compensation as required by law.

39. To add insult to injury, Plaintiff never received a notice of pay rate and payday, nor did she receive accurate wage statements for every pay period she worked.

40. Had Plaintiff received a notice of pay rate and payday as required by law, she would have been informed that she is entitled to $15.00 per hour for all hours worked, except that her tips may make up the difference for her tip credit wage rate of $10.00 per hour, and that – if she did not earn enough in tips to cover the $5.00 per hour differential – she would be entitled to receive additional compensation to earn at least the minimum wage.

41. Had Plaintiff known about this, she would have sought to recover the minimum wage for all hours worked for the weeks that she did not earn enough in tips to earn at least the minimum wage.

42. Similarly, had Plaintiff received a notice of pay rate and payday as required by law, she would have been informed that she is entitled to $22.50 per hour for all overtime hours worked, except that her tips may make up the difference for her tip credit overtime wage rate of $17.50 per hour, and that – if she did not earn enough in tips to cover the $5.00 per hour differential – she would be entitled to receive additional compensation to earn at least the minimum overtime wage.

43. Had Plaintiff known about this, she would have sought to recover the minimum overtime wage for all hours worked for the weeks that she did not earn enough in tips to do so.

44. Indeed, Plaintiff was never paid at the regular or tipped overtime wage; had she received notice as required by law, she would have sought the overtime wages she was entitled to when she was instead paid $600.00 per week for sixty (60) hours of work, all at the $10.00 wage rate.

45. Upon information and belief, at all times herein relevant, Ms. Ortega was a stellar employee during her entire tenure of employment with End Zone.

46. Upon information and belief, Plaintiff satisfactorily performed <u>all</u> of her duties and responsibilities during her employment with End Zone.

47. Moreover, upon information and belief, Plaintiff's work performance was above average, as she consistently received praise and complimentary reviews from the customers and tips from patrons of End Zone, up until the Defendants' campaign of sexual harassment against her.

48. At all times herein relevant, Defendant Yeghoyan was Plaintiff's supervisor.

49. At all times herein relevant, Plaintiff was **<u>not</u>** and never was romantically or sexually interested in Defendant Yeghoyan.

50. Further, at all times herein relevant, Defendant Yeghoyan had a significant other who was not Ms. Ortega; in fact, at all times relevant, he **was and is currently married with children.**

51. However, despite Defendant Yeghoyan's marital status and Plaintiff's **<u>clear</u>** disinterest in pursuing anything romantic with her supervisor, Ms. Ortega became the target of an egregious, unwanted, and discriminatory scheme of sexual harassment by him in the workplace.

52. At all times herein relevant, Plaintiff had **<u>no</u>** sort of consensual sexual relationship with her supervisor Defendant Yeghoyan.

53. The sole sexual encounter alleged herein thus occurred **<u>without Ms. Ortega's permission or consent.</u>**

54. Yet, for the duration of her employment with Defendants, Plaintiff was frequently subjected to a hostile work environment due to Defendant Yeghoyan's constant, unreprimanded sexual harassment.

55. Additionally, upon information and belief, End Zone was aware of and acquiesced to Defendant Yeghoyan's harassment, never once acting to stop his conduct.

56. Beginning on her first day working at End Zone once Defendant Yeghoyan noticed Plaintiff, he targeted Plaintiff, subjecting her to flagrant sexual comments and actions, **which included multiple and repeated highly inappropriate comments about her appearance and increasingly aggressive sexual demands.**

57. Specifically, throughout her employment, Defendant Yeghoyan commented on Plaintiff's appearance, told Plaintiff he wanted her, and commented on the things he would do to her if he could have his way with her.

58. Plaintiff would tell Defendant Yeghoyan that she was not interested in having any kind of relationship with him outside of their work relationship, but Defendant Yeghoyan unrelentingly persisted.

59. On the evening of September 27, 2020 Plaintiff had been ordered to work at an "after-hours party" at End Zone, which Defendants hosted **in direct contravention of New York State and Governor Cuomo's shutdown orders.**

60. Upon information and belief, many of the managers and supervisors at End Zone attended the party, including Defendant Yeghoyan.

61. Further, upon information and belief, the entire staff of End Zone who attended the party was drinking, including the supervisors, with Defendant Yeghoyan specifically pouring round after round of free shots for the other workers, including the Plaintiff.

62. By 3:00 a.m., after intoxicating Plaintiff with multiple rounds of alcoholic beverages, Defendant Yeghoyan approached Plaintiff and asked if she had seen the rooftop of End Zone.

63. Plaintiff responded that she had not.

64. "Would you like to see it?" Yeghoyan then asked her. "It's an amazing view," he added.

65. Plaintiff immediately asked if they were even allowed to go up there at 3:00 a.m. since End Zone had closed at midnight.

66. Defendant Yeghoyan responded, **"Yes, it's fine. Don't worry. I'm your boss and I'm telling you it's okay."**

67. Fearing she would be fired for refusing Defendant Yeghoyan's demand, Plaintiff followed him up to the rooftop.

68. However, when Plaintiff and Defendant Yeghoyan reached the roof of End Zone, **he attacked.** Without warning, Defendant Yeghoyan shoved Plaintiff against a brick wall, unfastened his pants, turned her around, and began **<u>forcibly raping Ms. Ortega.</u>**

69. As soon as Ms. Ortega understood what was going on, she immediately began crying and begging Defendant Yeghoyan to stop, fighting back against him with every ounce of strength she could muster.

70. Unfortunately, Defendant Yeghoyan had Plaintiff pinned against the wall, and no matter how hard she struggled, he overpowered her.

71. Defendant Yeghoyan's strength did not stop Plaintiff from fighting back, however, as is evidenced by the <u>multitude of scrapes</u> Plaintiff received on her skin from struggling against the rough stone wall he had her pinned against.

72. Unfortunately, however, Defendant Yeghoyan **<u>did not stop until he was "finished"</u>** **despite Plaintiff's terrified pleas for him to stop, and despite his role as Plaintiff's supervisor <u>and</u> an owner/manager of End Zone.**

73. **<u>Defendant Yeghoyan forcibly raped Ms. Ortega on the rooftop at End Zone during an "after-hours" party on September 27, 2020.</u>**

74. Plaintiff is in possession of **<u>tangible proof,</u>** specifically, Defendant Yeghoyan's ***used condom*** which he ***accidentally*** left behind in Plaintiff's pants.

75. In the days after the attack on the rooftop, Plaintiff mentally battled waves of different emotions caused by Defendant Yeghoyan's actions, and the next time she worked at End Zone while Defendant Yeghoyan was working, she felt extremely uncomfortable, frozen, and paralyzed upon seeing him.

76. Upon information and belief, Defendant Yeghoyan, on the other hand, was unfazed by the rooftop incident, and he proceeded to interact with – and even *flirt* with – Plaintiff as if nothing had happened.

77. Plaintiff, however, did not respond to Defendant Yeghoyan and instead actively sought to escape from him in any way she could when he attempted to get near her.

78. When Defendant Yeghoyan noticed that Plaintiff was avoiding him, he confronted her and expressed that he did not like how Plaintiff was treating him and avoiding him.

79. Accordingly, a few days after the attack, Plaintiff worked up the courage to confront Defendant Yeghoyan and inform him that what he did was not okay and that she just wanted to work to earn a living for herself and her children without him flirting with her or touching her.

80. In their discussion, Plaintiff explained once more to Defendant Yeghoyan that she did <u>not</u> want to be sexually or romantically involved with him. She repeatedly emphasized that this was best for both of them since Defendant Yeghoyan was **married** and because they worked together.

81. Further, Plaintiff emphasized that she needed her job at End Zone so she could support her children, and she did not want to jeopardize that.

82. Unfortunately, however, Plaintiff's attempt at talking things out with Defendant Yeghoyan only seemed to make him angry, and that is when his retaliatory campaign began.

83. Thereafter, Plaintiff began noticing Defendant Yeghoyan was not only avoiding her, but he had also stopped scheduling her to work her normal evening shifts, instead giving her short mid-day shifts when End Zone was less busy, resulting in her receiving less wages and tips.

84. Then, suddenly, on November 3, 2020, **Plaintiff was informed by text from Defendant Yeghoyan that End Zone "no longer required her services."**

85. To add insult to injury, Defendant Yeghoyan informed Plaintiff that she was terminated **because she "forgot a couple of things" the last time she waitressed at End Zone.**

86. However, upon information and belief, this proffered reason for Plaintiff's termination was merely a pretext for Defendant Yeghoyan's unlawful sexual harassment, discrimination, and retaliation, which Defendant Yeghoyan instigated because he realized Plaintiff would not silently let him continue to sexually harass her; as a result, he wanted her gone.

87. End Zone and its agents and employees, including all the Defendants named herein, who upon information and belief, were aware of Defendant Yeghoyan's egregious sexual misconduct which was occurring at the workplace, failed to address same and deliberately turned a blind eye to it.

88. Upon information and belief, Defendants intentionally ignored the hostile work environment created by Defendant Yeghoyan's sexual harassment, and instead orchestrated a course of discrimination and retaliation against Plaintiff to force her out of her job at End Zone.

89. In so doing, Defendants engaged in conduct that will very likely thwart other employees from making complaints of discrimination or sexual harassment for fear of retaliation such as Plaintiff and others, thereby enabling Defendants to continue preying on its employees.

90. Plaintiff has been unlawfully discriminated against, sexually harassed, humiliated, degraded, and retaliated against by Defendant Yeghoyan in the workplace at End Zone.

91. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

92. As a result of the above, Plaintiff has been damaged in an amount to be determined at trial.

93. Upon information and belief, Defendants' actions and conduct were intentional and intended to harm Plaintiff.

94. As the Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount to be determined at trial.

95. Furthermore, Plaintiff also seeks attorney's fees, prejudgment interest, post-judgment interest, costs, disbursements, and expenses incurred in the prosecution of this action.

96. Finally, Plaintiff also requests such other relief as the Court may deem just, equitable, and proper to remedy to Defendants' unlawful employment practices.

## FIRST CAUSE OF ACTION
## (DISCRIMINATION & HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII – CORPORATE DEFENDANT)

97. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

98. By the actions described above, among others, Defendants have egregiously discriminated against Plaintiff on the basis of her sex and gender, in violation of Title VII, by denying Plaintiff the same terms and conditions of employment available to similarly situated male employees, including, but not limited to, by subjecting her to a hostile work environment and terminating her employment.

99. The Corporate Defendant's conduct was discriminatory because similarly situated males were not subjected to the conduct complained of herein.

100.    The conditions of employment constituted a hostile work environment because Defendants engaged in severe and egregious conduct solely because Plaintiff is a woman.

101.    As a direct and proximate result of Defendants' unlawful conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

102.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages.

103.     Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton acts and/or reckless indifference to Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

104.     Plaintiff is also entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF NYSHRL AS TO ALL DEFENDANTS)**

105.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

106.     New York State Executive Law § 296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

107.     By the actions described above, and among others, Defendants engaged in an unlawful discriminatory practice in violation of the New York Executive Law because of Plaintiff's sex, subjecting Plaintiff to a hostile work environment.

108.     Defendants discriminated against Plaintiff and violated the above section.

109.     That as a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

## THIRD CAUSE OF ACTION
## (HOSTILE WORK ENVIRONMENT IN VIOLATION OF NYSHRL AS TO ALL DEFENDANTS)

110.       Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

111.       Pursuant to the New York Executive Law, Plaintiff can establish a hostile work environment claim if she can show that was treated less well than other employees because of her protected class.

112.       In the present case, Plaintiff was specifically singled out and sexually harassed by Defendant Yeghoyan, which was facilitated by the corporate Defendants and their agents and employees, including Defendant Dimitri and Defendant Yevgeniy.

113.       Accordingly, Plaintiff was treated differently and unfairly by the Defendants because of her sex.

114.       As a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## FOURTH CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF NYSHRL AS TO ALL DEFENDANTS)

115.       Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.       By the foregoing acts and omissions, Defendants retaliated against Plaintiff on the basis of her protected activity in the form of complaining of the sexual harassment and discrimination she was being subjected to, in violation of the NYSHRL.

117.       The retaliatory dismissal to which Plaintiff was subjected to would have dissuaded a reasonable employee in Plaintiff's position from reporting discrimination.

118.       As described herein, all Defendants are liable for the unlawful retaliatory termination of Plaintiff, in violation of NYSHRL § 296(1).

119.     Plaintiff was treated disparately from other similarly situated employees who had not complained of discrimination.

120.     Defendants' unlawful retaliatory acts caused Plaintiff to suffer partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails.

### FIFTH CAUSE OF ACTION
### (DISCRIMINATION IN VIOLATION OF NYCHRL AS TO ALL DEFENDANTS)

121.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

122.     The Administrative Code of the City of New York § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

123.     Defendants engaged in an unlawful conduct in violation of the New York City Administrative Code ("NYCAC") Title 8, § 8-107(a) by creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her sex and gender.

124.     As a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### SIXTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF NYCHRL ALL DEFENDANTS)

125.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

126.     Pursuant to the NYCAC, Plaintiff can establish a hostile work environment claim if she can show that was treated less well than other employees because of her protected class.

127.    In the present case, Plaintiff was specifically singled out and sexually harassed by Defendant Yeghoyan, which was facilitated by the corporate Defendants and their agents and employees, including Defendants Dimitri and Yevgeniy.

128.    Plaintiff was treated differently and unfairly by the Defendants because of sex.

129.    That as a direct result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF NYCHRL AS TO ALL DEFENDANTS)

130.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

131.    As alleged herein, Defendants have retaliated against Plaintiff on the basis of her protected complaints about Defendant Yeghoyan's sexual harassment and End Zone's culture of discrimination.  As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

132.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress for which she is entitled to an award of damages.

133.    Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (FLSA Minimum Wage & Overtime Wage Violations)

134.    Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

135.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a workweek longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times (1.5x) the regular rate at which she is employed, or one and one-half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

136.    Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek, but was not compensated at a rate of one and a half times (1.5x) her hourly pay for each hour worked over forty (40).

137.    At all relevant times hereto, Defendants operated under policies, programs, practices, procedures, protocols, routines, and rules of knowingly and willfully failing and refusing to pay Plaintiff at one and a half times her regular rate of pay for all hours she worked in excess of forty (40) hours per workweek.

138.    Further, at all relevant times hereto, Defendants actively failed to keep accurate required records of the overtime worked by Plaintiff, both knowingly and willfully, in violation of the FLSA.

139.    Instead, upon information and belief, Defendants paid Plaintiff ten dollars per hour for every hour worked and misappropriated her tips.

140.    Defendants knowingly and intentionally disregarded their legal obligations under the FLSA.

141.    Upon information and belief, Defendants' failure to pay Plaintiff at an accurate overtime rate in violation of the FLSA was not in good faith.

142.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 as Defendants has shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

143.     Accordingly, Plaintiff seeks damages in the amount of her respective unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, and other such legal and equitable relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### (NYLL Minimum Wage & Overtime Wage Violations)

144.     Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

145.     At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

146.     New York law prohibits an employer from permitting an employee to work without paying overtime wages of one and a half times (1.5x) of her regular rate for all hours worked in excess of forty (40) in any workweek.

147.     Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly, and repeatedly failed to pay Plaintiff at the required overtime rates, one and a half times (1.5x) her regular rate of pay, for all hours worked in excess of forty (40) per workweek, which was not in good faith.

148.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages, and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION
### (NYLL Failure to Notify)

149.     Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

150.     Pursuant to §195(1) of the NYLL, within ten business days of Plaintiff's hiring, Defendants were obligated to provide him with a notice describing, *inter alia*, her hourly regular and overtime rates of pay.

151.     Pursuant to §195(3) of the NYLL, Defendants were obligated to provide Plaintiff with a wage and pay statement, specifying her regular and overtime rates of pay, hours worked, and regular pay period.

152.     Defendants willfully and knowingly failed to provide Plaintiff with any accurate wage notices or paystubs regarding any of the hours Plaintiff worked for the Defendants a blatant violation of §195 of the NYLL.

153.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks damages in accordance with §195 of the NYLL for each week Defendants failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## TENTH CAUSE OF ACTION
### (NYLL Failure to Keep Records)

154.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

155.     NYCRR § 146-2.1 requires that employers maintain, establish, and preserve an employee's weekly payroll records for a period of not less than six years

156.     Defendants did not <u>ever</u> maintain, establish, or preserve *accurate* records of Plaintiff's weekly pay.

157.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of the actual hours worked and true wage earned by Plaintiff in order to facilitate their exploitation of Plaintiff's labor.

158.     Defendants' failure to maintain accurate records was not in good faith.

159.     As a result of Defendants' unlawful conduct, Plaintiff has sustained damages, including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

## ELEVENTH CAUSE OF ACTION
### (NYLL Failure to Provide Spread of Hours Compensation)

160.     Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

161.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

162.     By completely disregarding Plaintiff's hours spent working for Defendants past her off time during her double shifts which lasted more than ten (10) hours, Defendants were willfully and knowingly avoiding paying Plaintiff the spread-of-hours pay she was owed for these shifts.

163.     Thus, Defendants' failure to pay Plaintiff her due spread-of-hours pay constituted a willful violation of the NYLL, and was not in good faith.

## INJURY AND DAMAGES

164.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails.

165.     Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray that the Court enter judgment in her favor and against Defendants for the following relief:

A.     Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. §2000-e et seq., and awarding Plaintiff a recovery for damages sustained;

B.     that the Defendants engaged in unlawful employment practices prohibited by the New York State Human Rights Law, New York State Executive Law § 296 et seq., and awarding Plaintiff a recovery for damages sustained;

C.     Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code Title 8, § 8-107 et seq., and awarding Plaintiff a recovery for damages sustained;

D.     Awarding Plaintiff compensatory damages for her mental, emotional and physical injuries, distress, pain and suffering and injury to her reputation in an amount that exceeds the jurisdictional limit of all lower courts;

E.     Awarding Plaintiff punitive damages;

F.     Awarding Plaintiff wages and liquidated damages under the FLSA and NYLL;

G.     Awarding Plaintiff attorney's fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

H.     Awarding Plaintiff such other relief as the Court may deem just and proper to remedy Defendants' unlawful employment practices.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b), Plaintiff hereby demands a trial by jury on all issues of fact and

damages stated herein.

Dated:  Jamaica, New York
       November 28, 2024                 Respectfully submitted,

                                          **SAGE LEGAL LLC**
                                          <u>*/s/ Emanuel Kataev, Esq.*</u>
                                          Emanuel Kataev, Esq.
                                          18211 Jamaica Avenue
                                          Jamaica, NY 11423-2327
                                          (718) 412-2421 (office)
                                          (917) 807-7819 (cellular)
                                          (718) 489-4155 (facsimile)
                                          emanuel@sagelegal.nyc

Dated: Forest Hills, New York
       November 28, 2024                 **SHALOM LAW, PLLC**

                                          <u>/s/ *Jonathan Shalom*</u>
                                          Jonathan Shalom, Esq.
                                          10513 Metropolitan Avenue
                                          Forest Hills, NY 11375-6737
                                          (718) 971-9474 (office)
                                          (718) 865-0943 (facsimile)
                                          jonathan@shalomlawny.com

                                          *Attorneys for Plaintiff*
                                          *Ortega Illuminada*