## <u>CONFIDENTIAL SETTLEMENT AND GENERAL RELEASE ("AGREEMENT")</u>

For good and valuable consideration, receipt of which is hereby acknowledged, and in order to resolve and settle finally, fully and completely all matters or disputes that now or may exist between them, as set forth below, as set forth below, the Parties hereto agree as follows:

1)      <u>Parties</u>.  The Parties to this Agreement are:

a)      Iluminada Ortega and her heirs, representatives, successors and assigns (collectively, "ORTEGA");

b)      Champagne Room BK, Inc. and any of its predecessors, successors, parents, subsidiaries, affiliates, related companies, and any of their current or former owners, board members, officials, directors, shareholders, employee health, welfare and employee benefit plans and plan administrators, officers, agents, attorneys, insurers, representatives, employees, former employees, trustees, servants, divisions, branches, units, assigns, members or other individuals in any way related to the above entities (hereinafter referred to collectively as the "COMPANY").

c)      Ruben Yeghoyan and his heirs, representatives, successors and assigns (collectively, "YEGHOYAN")

2)      <u>Settlement Payments</u>.  ORTEGA understands that by signing and returning this Agreement and, contingent upon ORTEGA's fulfillment of the conditions of this Agreement, ORTEGA will receive the following payments and/or benefits from the COMPANY and YEGHOYAN, respectively, as set forth below.

a)      In consideration for ORTEGA's promises herein, YEGHOYAN agrees to pay ORTEGA and ORTEGA agrees to accept, in full satisfaction of any and all claims as further described below, the gross sum total of Twenty Thousand Dollars and Zero Cents ($20,000.00), which ORTEGA agrees will be paid as follows:

i)      YEGHOYAN will pay and ORTEGA will accept a check in the exact amount of Twenty Thousand Dollars and Zero Cents ($20,000.00), which shall be made payable to "SHALOM LAW, PLLC.", counsel for ORTEGA representing payment for alleged damages.

ii)      The Parties agree that the check described above will be sent to ORTEGA's counsel at 105-13 Metropolitan Avenue, Forest Hills, NY 11375 via UPS/FedEx Overnight within fourteen (14) calendar days of the date on which counsel for YEGHOYAN has received an executed copy of this Agreement signed by ORTEGA.

iii)     The Parties, through their designated counsel, shall file either a Notice of Dismissal or a Stipulation of Dismissal under Case No. 21-cv-01125 (Eastern District of New York), with prejudice, within five (5) days of ORTEGA's counsel confirming that the settlement funds have cleared.

b)     In exchange for the above consideration, and for the other promises by YEGHOYAN and the COMPANY made herein, ORTEGA has agreed not to seek any relief related to the releases in Paragraph 4, below, before any local, state or federal government agency or court or any other tribunal or forum.

3)    Review and Acknowledgement of Agreement Terms.  ORTEGA acknowledges that: (i) ORTEGA has been given the opportunity to consider this Agreement fully and that if ORTEGA signs this Agreement ORTEGA did so of ORTEGA's own free will; (ii) ORTEGA has consulted with an attorney before signing this Agreement; and (iii) ORTEGA has carefully read and fully understands all of the provisions of the Agreement, and has signed it freely and voluntarily without coercion and with knowledge of its meaning and effect.  This Agreement shall not become effective or enforceable until ORTEGA signs it (the "Effective Date").

4)    General Release and Waiver of Rights and Claims.  In exchange for the promises contained in this Agreement and to the extent permitted by law, the Parties agree as follows:

(a)    General Release of All Claims.  In exchange for the promises contained in this Agreement and to the extent permitted by law, ORTEGA hereby waives, releases and forever discharges, and agrees that she will not in any manner institute, prosecute or pursue, any and all complaints, claims, lawsuits, claims for relief, demands, suits, arbitrations, actions or causes of action, whether in law or in equity, which she asserts or could assert against the COMPANY and/or YEGHOYAN (collectively, the "Released Parties"), at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, claims that were or could have been raised by ORTEGA or which arose prior to the date ORTEGA signs this Agreement (collectively "Claims") against the Released Parties with respect to any event, matter, claim, damage or injury arising out of ORTEGA's interactions with YEGHOYAN and/or out of ORTEGA's employment with the COMPANY, the termination of such employment, any application for employment with the COMPANY, and/or ORTEGA's eligibility for employment with the COMPANY, and/or with respect to any other claim, matter, or event arising prior to execution of this Agreement by ORTEGA. This includes the causes of action raised, or which could have been raised, by ORTEGA in Case No. 21-cv-01125 (Eastern District of New York).  This Release includes any and all actions, complaints, rights, claims, charges, causes of action, demands, liabilities, attorneys' fees, costs, and damages based upon any conduct occurring up to and including, or that have accrued as of, the date that ORTEGA signs this

2

Agreement (and any obligations or causes of action arising from or predicated upon such claims), including but not limited to:

i)      any and all claims arising under common law, including but not limited to wrongful or retaliatory discharge, breach of express or implied contract, promissory estoppel, covenant of good faith and fair dealing, or based upon a violation of public policy;

ii)     any and all claims sounding in tort, including but not limited to fraud, battery, assault, conversion, libel, slander, defamation, or negligent or intentional infliction of emotional distress;

iii)    any and all claims arising under statutes which include but are not limited to the Civil Rights Acts of 1866 and 1867, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1991, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Americans with Disabilities Act ("ADA"), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, the Genetic Information Nondiscrimination Act, the Lilly Ledbetter Fair Pay Act of 2009, the Fair Credit Reporting Act, the Family and Medical Leave Act, the Equal Pay Act of 1963, as amended, the Consolidated Omnibus Budget Reconciliation Act, the Rehabilitation Act, Section 1981 of the Civil Rights Act of 1866, the New York State Executive Law, the New York State Human Rights Law, the New York City Gender-Motivated Violence Act, the New York City Administrative Code, the New York City Human Rights Law, the New York Labor Law, the New York Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, the New York Nondiscrimination for Legal Actions Law, the New York Wage Theft Prevention Act, the New York City Earned Sick Time Act, the New York Civil Rights Law;

(iv)    any and all claims for or relating to any form of employment discrimination, harassment, whistleblower or other retaliation, hostile work environment, improper wage payment or deductions, failure to notify, failure to keep records, failure to provide spread of hours compensated, or any other unlawful employment practice under federal, state, municipal, local, or foreign law;

(v)     any and all claims arising under any federal, state, municipal, local, or foreign law, rule, regulation or judicial or administrative decision that in any way prohibits employment discrimination, harassment, retaliation, improper wage payment or deductions, or any other unlawful employment practice, or that is in any way related to employment and/or the separation therefrom;

(vi)    any and all claims arising under any other federal, state, municipal, local, or foreign law, rule, or regulation, including but not limited to the United States and New York Constitutions, civil rights laws, wage-hour, wage-payment, pension, or labor laws, rules, and regulations, ordinances, public policy, contract or tort laws, or any other action;

(vii)    any and all claims for attorneys' fees, costs and expenses.  ORTEGA acknowledges that she is not a "prevailing party" as defined by any federal, state or local law, rule, judicial, arbitral or administrative decision; and

(viii)    any and all claims regarding any form of fringe or other employee benefits or equity holdings, including but not limited to any claims relating to stock, stock options, or other equity holdings.

The Parties further agree not to request or encourage any third party (including any governmental agency or representative) to bring any claims or actions against the other party, or seek any relief whatsoever, from the other party, or encourage any third party to act as their proxy in violation of this Agreement.  If any third party requests that any party to this Agreement participate in any such third party conduct, claim or action, the requested party shall immediately notify counsel for the other parties to this Agreement of the request, and unless required by subpoena, court order or other law, decline to participate in such third party conduct, claim or action.

(b)    <u>Included Released Claims</u>.  The Parties acknowledge that this Agreement includes, but is not limited to:  (i) release of any Claims arising from any statements (written or oral) made or distributed or published by any party before ORTEGA signed this Agreement; (ii) release of any Claims, to the extent permitted by law, for any type of wages, commissions, bonuses, separation or severance benefits; (iii) release of any Claims regarding the COMPANY's obligation to seek and/or place ORTEGA in any position; and (iv) release of any Claims related to, under and/or against the COMPANY's employee benefit plans, policies, procedures or practices, and including without limitation, any Claims related to any leave of absence, family and/or medical leave, short or long term disability leave.

(c)    <u>Included Released Class Action Claims</u>.  To the fullest extent permitted by law, ORTEGA acknowledges and agrees that included among the Claims released in Paragraph 4(a) above are any and all Claims that have been, or may be asserted by ORTEGA or by any other person or entity on ORTEGA's behalf in any class or collective action relating to ORTEGA's employment and/or the termination of ORTEGA's employment with the COMPANY.  Consistent with Paragraph 4(a):  (i) ORTEGA waives any right to become, and promises not to consent to become, a member of any class in a case in which any claims are asserted against the Released Parties that are related in any way to ORTEGA's employment with or termination from the

4

COMPANY, and that involve events which have occurred as of the date ORTEGA signs this Agreement; and (ii) ORTEGA waives any and all rights ORTEGA might otherwise have to receive notice of any such class or collective action. In the event that ORTEGA is included or identified as a member, or potential member of a class in any such proceeding, ORTEGA agrees to opt out of the class at the first opportunity afforded to ORTEGA after learning of ORTEGA's inclusion. In this regard, ORTEGA agrees that ORTEGA will sign, without objection or delay, an "opt-out" form presented to ORTEGA in connection with such proceeding.

(d)    Included Released Claims Filed by Any Person or Entity in Connection with ORTEGA's Employment.   ORTEGA agrees that should any person or entity file or cause to be filed any civil action, suit, arbitration, or legal proceeding seeking equitable or monetary relief in connection with any aspect of ORTEGA's employment relationship with the COMPANY, ORTEGA will not seek or accept any personal relief, including but not limited to an award of monetary damages or reinstatement to employment, in connection with such charge or claims.

(e)    Release of Existing but Currently Unknown Claims.   Notwithstanding any local or other law to the contrary, the Parties expressly agree that Paragraph 4(a) above will extend and apply to all Claims, injuries and damages that ORTEGA may have against the Released Parties at the time ORTEGA signs the Agreement, regardless of whether the Parties are aware of or suspect such claims, injuries or damages at the time ORTEGA signs.

(f)    Included Released Claims in Any Jurisdiction, Domestic or Foreign.   The Parties acknowledge that this Agreement releases all Claims asserted or that could be asserted by either party against the other in any jurisdiction in the United States as well as foreign jurisdictions.

(g)    Claims Not Included.   ORTEGA agrees that the above paragraphs shall release the Released Parties from liability to the fullest extent permitted by law. ORTEGA acknowledges that the General Release does not prohibit the following rights or claims: (1) claims that first arise after the date ORTEGA signs this Agreement or which arise out of or in connection with the interpretation or enforcement of the Agreement itself. If it is determined that any claim covered by this Agreement cannot be waived as a matter of law, ORTEGA expressly agrees that the Agreement will nevertheless remain valid and fully enforceable as to the remaining released claims.

(h)    Acknowledgement.   The Parties agree that each provision in this Paragraph 4, without limitation, is a material provision of this Agreement.

5)    Absence of Certain Claims.

(a)    Absence of Agency or Court Claims.   ORTEGA acknowledges that, as of the date ORTEGA signs this Agreement, ORTEGA has not filed or otherwise pursued any charges,

complaints or claims of any nature against the Released Parties with any local, state or federal government agency or court or arbitral body or tribunal on or prior to the date of signing this Agreement.

(b)    Absence of Entitlement to Payments, Benefits or Consideration. ORTEGA further acknowledges and agrees that the COMPANY has fully satisfied all of its obligations to ORTEGA as a matter of law and COMPANY policy, and ORTEGA has no additional claims against the COMPANY. ORTEGA agrees and acknowledges that the information in this Paragraph 5(b) is factually accurate as to ORTEGA and may be used as a sworn statement of fact in any proceeding between ORTEGA and the COMPANY.

6)    Tax Indemnification. ORTEGA is solely responsible for any tax liabilities and consequences which may result from her receipt of the settlement amount provided in Paragraph 2 of this Agreement and any non-employer tax liabilities and consequences which may result from her receipt of the settlement amounts and benefits provided in Paragraph 2 of this Agreement, and ORTEGA agrees that the Released Parties shall not bear any responsibility for such liabilities or consequences. ORTEGA agrees to protect, indemnify, defend and hold harmless the Released Parties from and against any and all liability, claims or audits for any taxes, assessments, interest and/or penalties with respect to any payment or payments made pursuant to this Agreement. Further, ORTEGA expressly agrees that the Released Parties shall not be required to pay any further sum to her, or to any other person or entity, if for any reason the tax liabilities and consequences to her are ultimately assessed in a fashion which she does not presently anticipate. ORTEGA covenants that she has not relied on the Released Parties for advice regarding any tax liabilities or consequences.

7)    Confidentiality. In consideration for the payments described in Paragraph 2 above, ORTEGA and her counsel of record agree that they will not disclose, divulge, publicize, reveal to or discuss with any person, entity, or media representative, or provide any materials or documents concerning, the existence of this Agreement, any of its terms, underlying allegations, the content of the negotiations leading to this Agreement, or names of the released parties except as stated below. Notwithstanding the foregoing, ORTEGA may disclose to her attorneys, licensed tax advisors, or other professional financial advisors in response to confidential credit inquiries, or as required by law, the contents or terms contained in this Agreement, provided that, to the maximum extent permitted by applicable law, rule, code, or regulation, any such recipient of this information agrees to maintain the confidentiality of the information. This confidentiality provision shall not apply to ORTEGA's claims under the Fair Labor Standards Act.

8)    Attorney's Fees and Costs. As further mutual consideration of the promises set forth herein, the Parties agree that they each are responsible for their own attorney's fees, costs, and expenses and each agrees not to seek from the other or others released hereby, including without

limitation, reimbursement for attorney's fees and/or costs incurred in any matters addressed in this Agreement, except as may be set forth herein.

       b)     <u>Liquidated Damages</u>. The Parties agree that in the event that payment is not tendered within 14 days of receiving an executed Agreement from ORTEGA, the breaching party shall pay liquidated damages in the amount of Twenty Thousand Dollars and Zero Cents ($20,000.00) and attorney fees incurred as a result of the breach. The parties agree that liquidated damages as described in this Agreement are a genuine estimate of ORTEGA's foreseeable damages and are ORTEGA's sole remedy for such breach. Delays caused by Force Majeure events or by actions of ORTEGA shall not constitute a delay resulting in the payment of liquidated damages.

9)     <u>No Admission of Liability</u>.  By entering into this Agreement, none of the Parties admits any liability whatsoever to any other party, whether arising out of any claims heretofore or hereafter asserted by ORTEGA or otherwise, and the Parties expressly deny any and all such liability or wrongdoing with respect to any and all claims released herein.

10)     <u>Joint Participation in Negotiation and Preparation of Agreement and Execution in Counterparts</u>.  The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party.  This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.  This Agreement may be executed by the Parties in counterparts and each set of original executed counterparts shall be deemed an original copy of this Agreement.

11)     <u>Assignments</u>.  ORTEGA represents and warrants that ORTEGA has not assigned or transferred to any person or entity any of ORTEGA's rights which are or could be covered by this Agreement, including, but not limited to, any covenant not to sue and the waivers and releases contained in this Agreement.

12)     <u>Severability</u>.  Should any of the material provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, or should either party fail to fulfill its obligations under it, the remainder of this Agreement shall, to the fullest extent permitted by applicable law and at either party's option, remain in full force and effect, and/or the breaching party will be obligated to return, in full or in part, as determined by the  injured party, any and all consideration either party received in exchange for entering into this Agreement.

13)     <u>Choice of Law</u>.  The Parties further agree that, to the extent not governed by federal law or otherwise prohibited by state law, the Agreement is governed by the laws of the State of New York, without regard to its principles on conflict of law.  To the extent that a federal court or agency does not have jurisdiction over any action involving the validity, interpretation or enforcement of the Agreement, or any of its terms, provisions or obligations, the Parties agree that jurisdiction and venue shall exist exclusively in a court or government agency located in New York, New York, unless specifically prohibited by applicable law.

14)     <u>Paragraph Headings</u>.  Paragraph headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

15)     <u>Understanding and Use of Agreement</u>.   ORTEGA affirms and acknowledges that ORTEGA has read the foregoing Agreement, that ORTEGA has had the opportunity to review or discuss it with the counsel of ORTEGA's choice who has represented ORTEGA in negotiating its terms, and that ORTEGA fully understands and appreciates the meaning of each of its terms.  The Parties to this Agreement represent that this Agreement may be used as evidence in any subsequent proceeding in which any of the Parties alleges a breach of this Agreement or seeks to enforce its terms, provisions or obligations.

16)     <u>Entire Agreement</u>.  The Parties understand, covenant, and agree that this Agreement constitutes the entire agreement relating to the matters stated herein, that there are no other agreements, covenants, promises, or arrangements between or among the Parties relating to the matters covered by this Agreement other than as expressly noted hereunder, that the terms and conditions of this Agreement cancel and supersede any prior agreements, promises, representations or understandings that may have existed between or among Parties with respect to all matters covered by this Agreement other than as expressly noted hereunder, that no other promise or inducement has been offered to either party except as set forth herein, and that this Agreement is binding upon all Parties, and their respective heirs, executors, administrators, successors and assigns.

17)      <u>No Oral Modification</u>.  This Agreement may not be changed orally; it may only be changed by a writing executed by all Parties.  Any party's failure to enforce any provisions of this Agreement will not constitute waiver of its rights under this Agreement.

18)     <u>Counterparts and Copies</u>.  This Agreement may be signed in any number of copies and counterparts, each of which shall be deemed an original when signed and shall constitute the same instrument.  Fully executed photocopies of the Agreement shall be treated as originals.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

**PLEASE READ THIS AGREEMENT AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. YOU SHOULD CONSULT AN ATTORNEY OF YOUR CHOICE ABOUT THIS AGREEMENT BEFORE YOU SIGN THE AGREEMENT. THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, INCLUDING STATE AND LOCAL LAWS PROHIBITING DISCRIMINATION IN EMPLOYMENT, TO THE EXTENT PERMITTED BY LAW.**

I hereby AFFIRM AND ACKNOWLEDGE that I have read the foregoing Agreement, that I have had sufficient time and opportunity to review and discuss it with the attorney of my choice, that I have had any questions about the Agreement answered to my satisfaction, that I fully understand and appreciate the meaning of each of its terms, and that I am voluntarily signing the Agreement on the date indicated below, intending to be fully and legally bound by its terms.

_____

ILUMINADA ORTEGA


Dated:          October ____, 2024

Counsel:          _____
                  JONATHAN SHALOM, ESQ.


_____

RUBEN YEGHOYAN

Dated:          October ____, 2024

Counsel:          _____
                  ELENA FAST, ESQ.


_____

RUBEN YEGHOYAN ON BEHALF OF CHAMPAGNE ROOM BK, INC.:

Counsel:          _____
                  ELENA FAST, ESQ.