UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ILUMINADA ORTEGA,

                Plaintiff,

    -against-                            **REPORT & RECOMMENDATION**
                                                      21 CV 1125 (HG) (CLP)

DIMITRI YAGUDAEV, *et al.*,

                Defendants.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On March 2, 2021, plaintiff Iluminada Ortega commenced this action against defendants Dimitri Yagudaev; Champagne Room BK, Inc. ("Champagne Room BK"), d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge ("End Zone"); Brooklyn Draft and Grill Inc. ("Draft and Grill"), d/b/a Draft Barn, d/b/a/ End Zone Sports Bar & Lounge; Elite Holdings and Management Inc. ("Elite Holdings"), d/b/a Adrenaline Bar & Lounge, d/b/a Draft Brn, d/b/a End Zone Sports Bar & Lounge; Ruben Yeghoyan; and Yevgeniy Trofimchuk; alleging that she was subjected to a hostile work environment, sexual harassment, discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, *et seq.*; Section 296 of the New York State Executive Law ("NYSHRL"), and Section 8-107(1) of the Administrative Code of the City of New York ("NYCHRL").  (ECF No. 1).

       On November 22, 2021, plaintiff filed her First Amended Complaint against Champagne Room BK and Yeghoyan only.[1]  (ECF No. 35).  On May 3, 2023, plaintiff filed a Second Amended Complaint, adding Sarkis Avoyants as a defendant and adding claims against all

---

[1] Defendants Trofimchuk and Draft and Grill were dismissed from the action pursuant to a stipulation So Ordered by the District Court on June 21, 2021.  (See ECF No. 21).  Defendants Yagudaev and Elite Holdings were dismissed by voluntary dismissal that was So Ordered by the District Court on July 12, 2021.  (See ECF No. 24).

1

defendants under the Fair Labor Standards Act and New York Labor Law.[2] (ECF No. 57). A Third Amended Complaint was filed on June 5, 2023, curing a technical defect of the Second Amended Complaint. (ECF No. 62; see also Order, dated 5/31/2023). Plaintiff filed her Fourth Amended Complaint on November 28, 2024, which added allegations related to her WTPA claims. (ECF No. 100).

Pending before this Court, on referral from the Honorable Hector Gonzalez, are two motions for approval of a settlement between plaintiff and defendants Ruben Yeghoyan and Champagne Room BK, filed on July 10, 2024 (the "First Motion") (ECF No. 90), and November 28, 2024 (the "Second Motion") (ECF No. 101), respectively, as well as a motion to file under seal the First Motion and attached settlement agreement (the "Motion to Seal") (ECF No. 91). For the reasons set forth below, is it respectfully recommended that plaintiff's Second Motion for settlement approval be granted, and plaintiff's First Motion for settlement approval be denied as moot. It is further recommended that the Motion to Seal be denied as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she worked as a hostess, waitress, and bartender at defendants' restaurant, End Zone, from September 2020 to November 2020. (F.A.C.[3] ¶¶ 33, 84). Plaintiff claims that she "routinely worked" in excess of 40 hours per week. (Id. ¶ 35). For example, plaintiff alleges she worked approximately 60 hours during the first week of November 2020.

---

[2] Defendant Avoyants has not yet appeared in this case. Plaintiff filed a motion for default judgment against defendant Avoyants on November 6, 2023 (ECF No. 76), which plaintiff subsequently withdrew to correct certain deficiencies and to amend the Complaint to add certain allegations related to her claims under New York's Wage Theft Prevention Act ("WTPA"), NYLL § 195. (See ECF Nos. 89, 92). Plaintiff filed her Fourth Amended Complaint, which added such allegations, on November 28, 2024 (ECF No. 100). On January 24, 2025, the Court granted defendants Yeghoyan's and Champagne Room BK's request to stay the deadline to answer or otherwise respond to the Fourth Amended Complaint pending the Court's decision on the settlement agreement, given that if the Court approves the settlement agreement, they will be terminated from the case. (Order, dated 1/15/2025; see also ECF No. 104).

[3] Citations to "F.A.C." refer to plaintiff's Fourth Amended Complaint, dated November 28, 2024 (ECF No. 100).

(Id. ¶ 36). She alleges she was paid ten dollars an hour for all hours worked. (Id. ¶ 34). Plaintiff further alleges that defendants routinely misappropriated plaintiff's tips "by shortchanging her at the end of each shift." (Id. ¶ 37). Plaintiff alleges violations of the minimum wage, overtime, and spread of hours laws, as well as wage statement, and wage notice requirements. (Id.)

In addition, plaintiff alleges that her supervisor, defendant Yeghoyan, sexually harassed her during her employment (id. ¶¶ 51-54), and that defendant Yeghoyan raped her on September 27, 2020, during an "after-hours party" at End Zone. (Id. ¶¶ 59, 68). Plaintiff alleges claims of discrimination, hostile work environment, and retaliation based on these allegations. (Id.)

On April 4, 2022, Champagne Room BK filed a Notice of Bankruptcy. (ECF No. 45); see In re Champagne Room Bk Inc., No. 22-40705 (Bankr. E.D.N.Y.). Plaintiff informed the Court she would proceed with her case as to defendant Yeghoyan[4], but would stay all action as to the corporate defendant.[5] (ECF No. 46). On September 6, 2023, Champagne Room BK filed a Second Notice of Bankruptcy. (ECF No. 72); see In re Champagne Room Bk Inc., No. 23-43187 (Bankr. E.D.N.Y.). On September 8, 2023, the Court entered an automatic stay in this case as to Champagne Room BK. (See Minute Entry, dated 9/8/2023).

On July 10, 2024, plaintiff filed her First Motion for approval of the settlement reached between plaintiff and defendants Yeghoyan and Champagne Room BK, which motion was referred to the undersigned by the District Judge on July 11, 2024. (ECF No. 90; Order, dated 7/11/2024). The same day, plaintiff filed her Motion to Seal the First Motion and attached settlement agreement, because the agreement contained a confidentiality provision that would

---

[4] At the time of the letter, defendant Avoyants had not yet been added to the case.
[5] In an October 22, 2024 letter, plaintiff advised the Court that this bankruptcy petition was dismissed on November 18, 2022 for failure to file schedules. (ECF No. 97). Although it appears that no one notified the Court at the time the bankruptcy petition was dismissed, defendant Champagne Room BK appeared at a June 9, 2023 status conference before this Court and thereafter participated in the case until the subsequent bankruptcy filing. (See Minute Entry, dated 6/12/2023).

3

have made the facts and terms of the settlement confidential. (ECF No. 91). In an Order dated August 7, 2024, this Court noted that it could not consider approval of any settlement agreement as to Champagne Room BK, as the bankruptcy stay had not been lifted. (ECF No. 93 at 1). In addition, the Court noted that the proposed settlement agreement contained a confidentiality provision covering FLSA claims. (Id. at 2). The Court advised the parties that it would not approve any settlement agreement containing a confidentiality clause covering plaintiff's FLSA claims, because courts in this Circuit have consistently rejected such provisions. (Id. (citing Gallagher v. Mountain Mortg. Corp., No. 22 CV 0715, 2023 WL 5977919, at *9 (E.D.N.Y. Sept. 14, 2023))).

On October 9, 2024, this Court held a status conference with the appearing parties. (See Minute Entry, dated 10/10/2024). After discussing the pending motion for settlement approval, the Court Ordered the parties to submit a renewed letter motion seeking settlement approval of a revised agreement, and a letter regarding the status of the bankruptcy proceeding, among other directives not relevant here. (Id.; see also Order, dated 11/18/2024).

On October 22, 2024, plaintiff submitted a letter indicating that the two bankruptcy petitions filed by Champagne Room BK had been dismissed and there was no longer a stay in effect as to this defendant. (ECF No. 97). On November 28, 2024, plaintiff submitted her Second Motion for settlement approval (ECF No. 101), with billing records submitted on December 28, 2024 (ECF No. 103). The District Judge referred the Second Motion to the undersigned on December 3, 2024. (Order, dated 12/3/2024). Since the attached settlement agreement did not include defendants' signatures, the Court issued an Order on January 15, 2025, directing plaintiff to advise the Court as to whether the Second Motion for settlement approval was still in effect, and if so, to file a copy of the fully executed settlement agreement on

4

the docket. (See Order, dated 1/15/2025). On January 24, 2025, plaintiff filed the fully executed settlement agreement and confirmed that the Second Motion was still in effect. (ECF No. 105).

## DISCUSSION

I. Legal Standard

Parties may not "privately settle FLSA claims with a stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41 absent the approval of the district court . . . ." Fisher v. SD Prot. Inc., 948 F.3d 593, 599 (2d Cir. 2020) (citing Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015)). In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). Courts within this Circuit have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Prot. Inc., 948 F.3d at 600 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (applying the Wolinsky factors).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if

5

a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d at 606 (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)). "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at 606. Rather, if a court finds one or more provisions of an FLSA settlement agreement to be unreasonable, the court must reject the proposed settlement. Id. at 605.

II. Analysis

    A.    The Second Motion

On November 28, 2024, plaintiff filed her Second Motion for settlement approval (ECF No. 101). Plaintiff incorporates into this motion the arguments presented in her First Motion.[6] (Id. at 1). In support of the Second Motion, plaintiff attached a copy of the proposed settlement agreement (ECF No. 101-1), and later filed the fully executed copy on January 24, 2025 (the "Second Agreement" or "Agr.") (ECF No. 105-1). Plaintiff submitted billing records in support of her request for attorneys' fees on December 28, 2024 (ECF No. 103).

The Court addresses each of the relevant terms of the Agreement in turn and, for the reasons discussed below, finds that the terms of the Second Agreement are fair and reasonable.

        1.    Settlement Amount

The parties agreed to resolve plaintiff's claims for $20,000.00 (the "Total Settlement Amount"). (ECF No. 90 at 2; Agr. ¶ 2). The Total Settlement Amount is structured to compensate plaintiffs as follows:

- $13,000.00 payable to plaintiff;
- $7,000.00 in attorneys' fees and costs.

---

[6] The Court therefore references and cites to the arguments presented in the First Motion as applied to the current settlement agreement.

6

(Id.)[7]

Plaintiff believes that the Total Settlement Amount is reasonable given the nature of the claims and defenses asserted by the parties and the risks of continued litigation. (Id. at 3). Moreover, plaintiff notes that settlement was reached "after lengthy negotiations between counsel." (Id. at 1). Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing her claims, and seeing no issues regarding potential coercion, fraud, or collusion in this case, the Court finds that the settlement amount reached is a fair and reasonable compromise. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

### 2. Attorneys' Fees and Costs

A court reviewing a request for attorneys' fees in connection with an FLSA settlement is required to examine the fee request for reasonableness, and the attorneys to whom the fee is to be paid must submit adequate documentation supporting the request. See, e.g., Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015); Fisher v. SD Prot. Inc., 948 F.3d at 600. Courts in this Circuit have routinely found an award representing one-third of the settlement amount (after deduction of costs) to be reasonable, although courts will also engage in a lodestar analysis to confirm the reasonableness of the fee request. See Allen v. County of Nassau, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023) (collecting cases). Ultimately, the goal is to sufficiently compensate plaintiffs' counsel for the risk associated with taking on contingent fees in FLSA cases without unduly deducting from the plaintiffs' total recovery. See Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (noting that "FLSA

---

[7] The Court notes that neither the Second Motion, nor the Second Agreement, indicate the amount sought for counsel's attorneys' fees. Given that plaintiff indicates that she incorporates her arguments from the First Motion into the Second Motion (ECF No. 101 at 1), the Court assumes that the amount in attorneys' fees requested in the First Motion continues to be what is requested.

7

requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement").

Counsel seeks an award of attorneys' fees and costs totaling $7,000.00, representing a discount from $7,652.27 ($6,666.66 in fees as one-third of the settlement plus $985.60 in costs). (ECF No. 90 at 2). The submitted billing records indicate that Shalom Law, PLLC billed $16,200.00, and Sage Legal LLC billed $2,790.00. (ECF Nos. 103-1, 103-2). Given that this case commenced in 2021, almost four years ago, and considering that the total award represents a significant discount from the amount counsel actually billed, the Court finds the award of attorneys' fees and costs to be fair and reasonable.

### 3. Non-Monetary Terms

As noted, the first settlement agreement submitted by the parties contained a confidentiality provision, which was accompanied by a motion to seal the First Motion and settlement. Pursuant to this Court's indication that it would not approve a settlement agreement that contained a confidentiality clause as to plaintiff's FLSA claims, the parties amended the broad confidentiality provision in the first settlement agreement by adding a sentence stating that "[t]his confidentiality provision shall not apply to ORTEGA's claims under the Fair Labor Standards Act." (Agr. ¶ 7). Courts have found that similarly revised language remedies the unenforceable provision when it allows plaintiff to speak freely about her FLSA claims. See Gallagher v. Mountain Mortg. Corp., 2023 WL 5977919, at *9 (finding that revised provision which "tacked on" a sentence that allowed the parties to discuss the underlying facts and settlement of the FLSA claims sufficiently remedied previous provision which only allowed disclosure of the "existence of the agreement"). Since Court approval is not required for the settlement of plaintiff's non-FLSA claims, this narrow carveout for the FLSA claims satisfies

8

Cheeks. See Gallardo v. PS Chicken Inc., 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018) (holding that a "'NYLL settlement agreement does not require judicial approval'" (quoting Yunda v. SAFI-G, Inc., No. 15 CV 8861, 2017 WL 1608898, at *2 (S.D.N.Y. Apr. 28, 2017))); Abrar v. 7-Eleven, Inc., No. 14 CV 6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (holding that plaintiff's "non-FLSA claims, which would remain confidential . . . would not require the Court's approval under Cheeks").

As for the other non-monetary provisions of the Agreement, none of them appear to offend the concerns raised in Cheeks. The Agreement contains a mutual release provision that provides that the parties mutually release each other from all claims. (Agr. ¶ 4). A mutual general release such as this does not offend Cheeks, as plaintiff notes that the settlement represents a "fair compromise" achieved by "lengthy negotiations" where plaintiff was represented by "experienced counsel." (ECF No. 90 at 1-3). See Zhu v. Meo Japanese Grill & Sushi, Inc., No. 17 CV 3521, 2021 WL 4592530, at *4 (E.D.N.Y. Oct. 6, 2021) (noting that mutual general releases "are acceptable when the agreement 'was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel'" (quoting Strauss v. Little Fish Corp., No. 19 CV 10158, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020))).

Based on a review of the Settlement Agreement, the Court finds no other non-monetary provisions that would offend Cheeks. Accordingly, it is respectfully recommended that the Second Motion for settlement approval be granted.

B.  The First Motion and Motion to Seal

Also pending before this Court on referral from the District Judge is the parties' First Motion, which sought approval of a settlement agreement which was identical to the Second Agreement, except that it contained a comprehensive confidentiality clause with no carveout for plaintiff's FLSA claims. (See ECF No. 91-1). Given that plaintiff filed the Second Motion

9

pursuant to this Court's Order of October 9, 2024 (Minute Entry, dated 10/10/2024), the Second Motion supersedes the First Motion, which is now moot.

In light of the Court's recommendation that the Second Motion for settlement approval be granted, the Court respectfully recommends that plaintiff's First Motion be denied as moot.

In addition, the Motion to Seal the First Motion and initial settlement agreement is also moot. As noted *supra*, the parties sought to seal the initial settlement agreement and First Motion pursuant to the broad confidentiality provision contained in the initial agreement. In filing the Second Motion, the parties did not request sealing and indeed, the revised settlement agreement and motion were filed on the public docket. (See ECF Nos. 101, 105-1). Given that the parties did not submit a new motion to seal and the publicly-filed Second Agreement is virtually identical to the initial agreement, save for the Second Agreement's one additional sentence, it is respectfully recommended that the Motion to Seal be denied as moot.

## CONCLUSION

For the reasons set forth above, is it respectfully recommended that plaintiff's Second Motion for settlement approval be granted and plaintiff's First Motion for settlement approval and Motion to Seal be denied as moot.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk of Court is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 30, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York