UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ILLUMINADA ORTEGA,

       Plaintiff,

     -against-

DIMITRI YAGUDAEV *et al.*,

       Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21 CV 1125 (HG) (CLP)

**POLLAK**, United States Magistrate Judge:

 On March 2, 2021, plaintiff Iluminada Ortega commenced this action against defendants Dimitri Yagudaev, Champagne Room BK, Inc. ("Champagne Room BK"), d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge ("End Zone"), Brooklyn Draft and Grill Inc., d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge, Elite Holdings and Management Inc. ("Elite"), d/b/a Adrenaline Bar & Lounge, d/b/a Draft Barn, d/b/a End Zone Sports Bar & Lounge, Ruben Yeghoyan, and Yevgeniy Trofimchuk, alleging that she was subjected to a hostile work environment, sexual harassment, discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq., Section 296 of the New York State Executive Law ("NYSHRL"), and Section 8-107(1) of the Administrative Code of the City of New York ("NYCHRL").  (ECF No. 1).

 On May 3, 2023, plaintiff filed a Second Amended Complaint, adding defendant Sarkis Avoyants as a defendant, and adding claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  (ECF No. 57)  In a Fourth Amended Complaint filed on November 28, 2024, plaintiff added allegations relating to her claims under the Wage Theft Prevention Act ("WTPA").  (ECF No. 100).

1

Currently pending before this Court is plaintiff's motion for default judgment against defendant Avoyants. For the reasons set forth below, it is respectfully recommended that plaintiff's motion be granted as to liability and awarding overtime pay and liquidated damages from defendant Avoyants, but denied as to the WTPA damages, prejudgment interest, and attorney's fees, without prejudice to renew in accordance with the Court's instructions.

<u>FACTUAL BACKGROUND</u>[1]

Plaintiff alleges that she worked at the End Zone from September 2020 to November 2020, as a hostess, waitress and bartender. (FAC[2] ¶¶ 33, 84). She claims that although she routinely worked more than 40 hours per week, she was paid $10.00 per hour for all hours worked, and that defendants misappropriated her tips by shortchanging her at the end of each shift. (<u>Id.</u> ¶ 37). She alleges that she never received notice of pay or accurate wage statements, which would have informed her that she was entitled to $15.00 an hour, inclusive of a $5.00 tip credit, and an overtime rate of $22.50, also inclusive of a $5.00 tip credit, based on the $15.00 New York minimum wage rate at the time, for all hours worked over 40 in a week. (<u>Id.</u> ¶¶ 39-42). Had she known, she alleges that she would have sought to recover the minimum wage for all hours worked on the weeks that she did not earn enough in tips to earn at least the minimum wage. (<u>Id.</u> ¶¶ 43-44). She alleges that defendants violated the minimum wage, overtime, and spread-of-hours laws, as well as wage statement and wage notice requirements. (<u>Id.</u>)

Plaintiff alleges that the corporate defendant Champagne Room BK employed fifteen or more employees, had an annual gross volume of sales not less than $500,000.00, and was an

---

[1] For a more detailed discussion of the facts, see this Court's Report and Recommendation, filed January 30, 2025 (ECF No. 106).

[2] Citations to "FAC" refer to plaintiff's Fourth Amended Complaint, filed November 28, 2024 (ECF No. 100).

employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(e) and 206(a).  (FAC ¶¶ 19-21).  Defendant Yeghoyan is alleged to have been an officer and agent of the corporate defendant, employed in a supervisory capacity at the End Zone.  (Id. ¶¶ 24-31).[3]  Defendant Avoyants was also alleged to be an officer and agent of the corporate defendant, who supervised and managed plaintiff as an agent of the corporate defendant.  (Id. ¶¶ 29-32).

PROCEDURAL HISTORY

A.  The Settling Defendants

On September 8, 2023, the Court entered an automatic stay as to the corporate defendant, Champagne Room BK, based on that defendant's notice of bankruptcy.[4]  (Minute Entry dated Sept. 8, 2023).  Following the filing of the Fourth Amended Complaint, plaintiff filed her First Motion for approval of a settlement reached between plaintiff and defendants Yeghoyan and Champagne Room, which motion was referred to the undersigned by the district judge on July 11, 2024.  (ECF No. 90).  At that time, the bankruptcy stay was still in effect, so the Court advised the parties that it could not consider the settlement until the stay was lifted.  (ECF No. 93).

On October 22, 2024, plaintiff submitted a letter indicating that the bankruptcy stay had been lifted, and on November 28, 2024, plaintiff submitted her Second Motion for settlement approval.  (ECF No. 101).  Based on the December 3, 2024, referral from the district court, this

---

[3] According to the Fourth Amended Complaint, defendant Yeghoyan subjected plaintiff to a hostile work environment, sexually harassing her and raping her on the evening of September 27, 2020.  (FAC ¶¶ 49-80).  When she attempted to speak to him afterwards, he began avoiding her, and eventually terminated her on November 3, 2020.  (Id. ¶¶ 78-85).

[4] On April 4, 2022, the corporate defendant filed its first Notice of Bankruptcy (ECF No. 45), which was dismissed on November 18, 2022, for failure to file schedules.  (ECF No. 97).  A Second Notice of Bankruptcy was then filed on September 6, 2023.  (ECF No. 72).

3

Court issued a Report and Recommendation approving the proposed settlement and denying plaintiff's First Motion for settlement approval and Motion to Seal as moot. (ECF No. 106). The district court adopted the Report and Recommendation on February 14, 2025, resolving all claims against defendants Yeghoyan and Champagne Room BK.

B. Defendant Avoyants

With respect to defendant Avoyants, plaintiff moved for entry of a default against him on August 20, 2023, following his failure to file an Answer to the June 5, 2023, Third Amended Complaint, charging him with overtime violations under the FLSA and NYLL, as well as recordkeeping violations and failure to provide spread-of-hours pay. (ECF No. 68). The Clerk of Court entered a default on August 23, 2023 (ECF No. 69), and thereafter, plaintiff moved for default judgment on November 6, 2023. (ECF No. 76). The district court referred the motion to the undersigned on November 6, 2023. (ECF Order dated Nov. 6, 2023).

On April 26, 2024, this Court held a hearing at which plaintiff was given 45 days to: 1) indicate if she wished to amend her Complaint to add allegations of injury sufficient to establish standing under the WTPA; and 2) if not, to correct certain mistakes in the Declaration in support of the motion for default judgment, including a re-calculation of damages. (Minute Entry dated Apr. 26, 2024; ECF No. 87). On July 10, 2024, counsel moved to withdraw the motion for default judgment (ECF No. 89), which the Court granted on August 7, 2024. (ECF No. 93).

The Fourth Amended Complaint was then filed on November 28, 2024 (ECF No. 100), and on January 30, 2025, the district court issued an order noting that plaintiff had not only failed to file proof of service on defendant Avoyants, but had not even requested a summons to allow such service. (ECF Order dated Jan. 30, 2025). The court set certain deadlines by which plaintiff was to file a proposed summons with the Clerk of Court and submit a letter detailing her

efforts to serve defendant, noting a number of instances in which counsel had missed multiple deadlines in the case.  (Id.)

On February 7, 2025, the district court issued another order, noting that the summons filed by plaintiff was improper and that plaintiff's counsel had again missed the deadline without explanation.  (ECF Order dated Feb. 7, 2025)  Counsel was ordered to submit a letter showing cause why he should not be sanctioned and explaining – as previously ordered – whether plaintiff intended to proceed against defendant Avoyants, along with a description of the efforts made to serve the Fourth Amended Complaint and summons.  (Id.)  Counsel then submitted the proposed summons, a letter concerning plaintiff's claims and efforts to serve Avoyants, and a response to the court's Order to Show Cause.  (ECF Nos. 110, 111, 112)  Based on counsel's letters, the court declined to sanction counsel at that time.

According to plaintiff's counsel's Declaration in Support of Motion For Default Judgment Against Defendant Sarkis Avoyants, filed April 26, 2025 ("Kataev Decl."), Avoyants was first served with the Second Amended Complaint on May 11, 2023, pursuant to N.Y. Civil Practice Law & Rules ("CPLR") § 308(2).  (Kataev Decl. ¶ 11; ECF No. 59)  The Third Amended Complaint was served on Avoyants on June 20, 2023, also pursuant to CPLR § 308(2).  (Id. ¶ 13; (ECF No. 64)).[5]  According to plaintiff's counsel's Declaration, he "caused Defendant Sarkis Avoyants to be sent a hard copy of the Fourth Amended Complaint . . . and the Summons dated February 10, 2025 . . . via first class mail."  (Kataev Decl. ¶ 4; see also the February 10, 2025 Declaration of Emanuel Kataev, Esq. as to Service of the Fourth Amended Complaint on

_____

[5] According to the Affidavits of the process server, sworn to on May 15, 2023 and June 26, 2023, respectively, he served the Second and Third Amended Complaints by delivering copies to Svetlana Safarian, grandmother of Sarkis Avoyants, at Avoyants' usual place of abode within the state.  (ECF Nos. 59, 64)  He then mailed a copy of each by first class mail to Avoyants' residence at 233 Avenue W, Brooklyn, N.Y. 11223.  (Id.)

Defendant Sarkis Avoyants in Accordance with This Court's Scheduling Order, Dated Feb. 10, 2025 (ECF No. 114) (citing Ex. A thereto)).[6]

On March 12, 2025, counsel filed a request for a certificate of default when Avoyants failed to answer or otherwise move with respect to the Fourth Amended Complaint. (ECF No. 116). The district court denied the request as deficient in failing to comply with Local Civil Rule 55.1(a)(2), in that it failed to include an Affidavit showing that the requirements of Rule 4 for service had been met and that the defendant had failed to plead or otherwise defend. (ECF Order dated March 12, 2025). Pursuant to the court's Order, plaintiff filed a new request for a certificate of default on March 19, 2025, and the Clerk of Court entered a default on March 28, 2025. (ECF No. 118).

On March 26, 2025, counsel filed a Second Motion for Default Judgment (ECF Nos. 120-123), which was referred to the undersigned by the district court to prepare a report and recommendation. Although the Court gave defendant time to submit papers in response, nothing was filed. (ECF No. 124).

Accordingly, the Court has reviewed plaintiff's motion papers and respectfully recommends that damages be awarded as follows.

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil

---

[6] Pursuant to Fed. R. Civ. P. 5(a)(1)(B) and (b)(2)(C), once a defendant has been properly served with the original complaint, service of any subsequent pleading may be made by mail to the last known address of the defendant.

6

Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme sanction," it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the claims were adequately pleaded in the complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default

7

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); (2) "whether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023) (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992)), report and recommendation adopted by, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023); and (3) the amount of money potentially involved – "the more money involved, the less justification for entering the default judgment," id. Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish her entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendant's liability as a matter of law, for a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts

8

establish the defendant's liability on each cause of action asserted.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  In doing so, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor.  Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish her entitlement to damages to a "reasonable certainty."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd by, 873 F.2d 38 (2d Cir. 1989).  In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83-84.  The court also "may rely on detailed affidavits or documentary evidence."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. at 156.

In this case, it is beyond dispute that defendant Avoyants is in default.  Although it appears that defendant was properly served with the Summons and Complaint, he failed to file an answer or otherwise respond to the pleadings.  Defendant also failed to respond to plaintiff's request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear – it does not even oppose this motion"), and despite having months to do so, he did not submit papers in response to plaintiff's motion for default judgment.  Thus, plaintiff's claims and evidence of damages are undisputed.

Given the numerous opportunities afforded to defendant, and his apparent lack of interest

in participating in these proceedings, the Court finds no compelling reason to delay the case any further and finds that default is appropriate here.

I.    <u>Liability</u>

In this case, plaintiff alleges that defendant violated the FLSA and the NYLL by failing to pay overtime wages, and by failing to provide wage statements and notices as required by the NYLL.  (FAC ¶¶ 134-144, 145-148, 149-153).[7]

A.    <u>FLSA Claims</u>

To establish a claim under the FLSA, a plaintiff must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  <u>Edwards v. Community Enters., Inc.</u>, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a)); <u>see also</u> <u>Tony & Susan Alamo Found. v. Secretary of Lab.</u>, 471 U.S. 290, 295 (1985).

1)    <u>Employer Subject to FLSA</u>

As to the first requirement, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000 . . .

---

[7] Although the Fourth Amended Complaint alleges claims of discrimination, hostile work environment, and retaliation against "all defendants," it does not appear that plaintiff is seeking damages from defendant Avoyants based on these causes of action.  (See generally Pl.'s Mem. at 3; <u>see generally</u> FAC, Second, Third, Fourth, Fifth, Sixth, Seventh I Causes of Action).  The Court notes that there are two Seventh Causes of Action in the Fourth Amended Complaint:  "Seventh Cause of Action I" alleges claims of retaliation in violation of the NYCHRL as to all defendants (FAC ¶¶ 130-133); "Seventh Cause of Action II" alleges claims of FLSA Minimum Wage and Overtime Violations (FAC ¶¶ 135-143).  It also appears as if plaintiff is not pursuing her claims against defendant Avoyants for minimum wage violations under the NYLL (Eighth Cause of Action; FAC ¶¶ 145-148), spread-of-hours violations (Eleventh Cause of Action; FAC ¶¶ 161-163), or damages under NYCRR § 146-2.1 for failure to keep records.  (Tenth Cause of Action; FAC ¶¶155-159; <u>see generally</u> Pl.'s Mem. at 3).

29 U.S.C. § 203(s)(1)(A).

In the Complaint, plaintiff alleges that the defendants are employers within the meaning of the FLSA and NYLL, with the corporate defendant being an "employer engaged in commerce and/or in the production of goods for commerce" within the meaning of the FLSA.  (FAC ¶ 21). Plaintiff further alleges that at all relevant times, the corporate defendant had 15 or more employees, and gross annual sales of at least $500,000.00, and that defendant was engaged in the production or sale of goods for commerce.  (Id. ¶¶ 19, 20, 22).  In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage.  See, e.g., Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State").  Thus, taking these allegations as true, the Court finds that plaintiff has established that the corporate defendant Champagne Room BK qualifies as an employer under the FLSA.

2)  Individual Employer Doctrine

This action was brought against the corporate entity and the individually named defendant Sarkis Avoyants.  As for defendant Avoyants, plaintiff alleges that during the relevant period, Avoyants was an officer and agent of the corporate defendant, who was employed in a supervisory capacity at the restaurant, the End Zone.  (FAC ¶¶ 29, 30).  He is alleged to have supervised and managed plaintiff, and as an agent of the corporate entity, had supervisory authority over plaintiff.  (Id. ¶¶ 31, 32).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . "  29 U.S.C. § 203(d).  "Person" is defined as "an

11

individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff, Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

Based on the allegations in the Complaint regarding defendant Avoyants, plaintiff has adequately alleged the elements necessary to state a claim against him as an "employer," and thus the corporate defendant and defendant Avoyants would be jointly and severally liable for any wage violations.

### 3)  Employees Within FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).  In determining whether a plaintiff is an "employee" within this definition, the "ultimate question is 'whether as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'"  Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)).

Plaintiff alleges in the Fourth Amended Complaint that she worked for the defendants in different capacities as hostess, waitress and bartender.  (FAC ¶ 17).  Plaintiff also alleges that the individual defendant Avoyants is an agent of the corporate defendant and exercised supervisory control over plaintiff's conditions of employment.  (Id. ¶¶ 29-32).  Thus, based on the allegations in the Complaint, plaintiff qualifies as an "employee," and the individual defendant Avoyants qualifies as her "employer" under the FLSA.  The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[8]  See 29 U.S.C. § 213(a) (setting forth the exemptions under the FLSA).

4)  Wage Claims - FLSA

In her Motion for Default Judgment, plaintiff seek damages under the FLSA for defendant's failure to pay overtime wages.  (See Pls.' Mem.[9] at 3).  The Court must consider whether these FLSA claims were adequately pleaded.  Plaintiff alleges in the Fourth Amended Complaint that from the start of her employment in or about September 2020 until her termination on November 3, 2020, she was paid in cash at the regular hourly rate of $10.00 an hour for all hours worked in a week, even though she alleges she "routinely worked in excess of forty (40) hours in a week."  (FAC ¶¶ 34, 35).  For example, she cites the first week of November 2020, when she claims to have worked sixty (60) hours and was only paid $600.00.  (Id. ¶ 36).[10]

---

[8] The Court notes that the burden of demonstrating that an employee falls within one of these exempted categories rests squarely with the employer.  Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses that an employer must prove).  Since defendants have failed to appear in this action, they have not availed themselves of any of the affirmative defenses provided for in the statute.

[9] Citations to "Pl.'s Mem" refer to Plaintiff's Memorandum of Law in Support of Her Motion for Default Judgment Against Defendant Sarkis Avoyants, filed April 26, 2025 (ECF No. 121).

The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a rate of one-and-one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  Id.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

In the Fourth Amended Complaint, plaintiff has adequately alleged that during her employment, she routinely worked more than 40 hours a week, citing at least one week in which she alleges that she worked 60 hours, which would amount to 20 hours of overtime for which she should have been paid time-and-a-half.  Since she claims she was paid $10.00 an hour regardless of the number of hours worked, she has alleged that she was not paid proper overtime wages for all overtime hours worked.  (FAC ¶¶ 135, 136, 141, 146, 147).

Finally, the statute of limitations under the FLSA is two years, or three years where defendants' violations of the FLSA were willful.  29 U.S.C. § 255(a).  Plaintiff alleges that defendants' violations of the FLSA were knowing and willful, and that they intentionally disregarded their legal obligations under the FLSA.  (FAC ¶¶ 138, 140, 141).  Moreover, defendants who default are considered to have committed "willful" violations, and the three-year statute of limitations applies.  See Rodriguez v. Queens Convenience Deli Corp., No. 09 CV

---

[10] The Fourth Amended Complaint further alleges that defendants routinely misappropriated plaintiff's tips by shortchanging her at the end of each shift, resulting in her being paid less than the minimum wage, in addition to not being paid overtime.  (Id. ¶¶ 37-38).

1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  Crediting plaintiff with a three-year statute of limitations, the Court finds that she has adequately pleaded FLSA claims for the duration of her employment; since her claims accrued when she began working in September 2020, and she filed suit in 2021, her claims are timely and within the three-year statute of limitations.

     B. <u>NYLL Claims</u>

     Plaintiff also alleges that defendants violated provisions of the NYLL related to overtime wages, minimum wages, and wage notices and wage statements.  (FAC ¶¶ 145-148, 150-153).

     To recover under the NYLL, plaintiff must prove that she was an "employee" and that the defendants were "employers" as defined by the statute.  <u>Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  <u>See</u> N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  In making these determinations, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee:  "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d at 34 (quoting <u>Bynog v. Cipriani Grp., Inc.</u>, 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1093, 770 N.Y.S.2d 692, 695 (2003)).  Any parties found to be employers under the NYLL are jointly and severally liable to the plaintiff. <u>See</u> <u>Tacuri v. Nithun Constr. Co.</u>, No. 14 CV 2908, 2015 WL 790060, at *4-5 (E.D.N.Y. Feb. 24, 2015); <u>Karic v. Major Automotive Cos.</u>, 992 F. Supp. 2d 196, 203 (E.D.N.Y. 2014).

As set forth above, plaintiff alleges that during the relevant period of time, defendant Avoyants was an agent of the corporate defendant, who had supervisory authority over plaintiff. (FAC ¶¶ 29-32).  In addition, plaintiff alleges that defendants were plaintiff's employers within the meaning of the NYLL §§ 2 and 651.  (Id. ¶¶ 21, 26, 31, 32). These allegations are sufficient to state a claim that defendants were employers under the NYLL.

Similarly, under the New York Labor Law, an employee is defined as "any individual employed or permitted to work by an employer in any occupation."  N.Y. Lab. Law § 651(5).  In this case, plaintiff alleges that at all relevant times, she was an employee within the meaning of the NYLL.  (FAC ¶ 33).  The allegations set forth in plaintiff's Fourth Amended Complaint, as outlined above, clearly establish that plaintiff was an employee of the defendants.

Accordingly, based on these uncontested allegations, the Court finds that plaintiff has adequately alleged that defendants were her employers and that she was an employee under the NYLL.  Moreover, the allegations in the Fourth Amended Complaint are sufficient to state a claim that plaintiff was not properly compensated for all overtime hours worked.  (See FAC ¶ 42 (alleging that plaintiff's overtime pay would have amounted to either $22.50 or $17.50 per hour of overtime, depending on the amount of tips she received each hour, but that she was only ever paid $10.00 per hour, regardless of the number of hours she worked)).  Thus, taking plaintiff's allegations as true, plaintiff has adequately pleaded violations of the FLSA and NYLL overtime provisions.

C.  Wage Theft Prevention Act Claims

The Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3), requires that employers provide employees with notices regarding their wages at the time of their hiring, and wage statements with each payment of wages.  The notice must contain the rate or rates of pay;

whether the employee was to be paid by the hour, shift, day, or week; any allowances claimed as part of the minimum wage; the regular pay day; the name of the employer; the physical address of the employer's main office; and the employer's telephone number in both English and the employee's primary language, if different from English.  Id. § 195(1)(a).  The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances.  Id. § 195(3).

The Supreme Court explained in TransUnion LLC v. Ramirez, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  594 U.S. 413, 426 (2021).  The Supreme Court clarified that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427 (emphasis in original).  Applying TransUnion to WTPA claims, the Second Circuit in Guthrie v. Rainbow Fencing Inc. recently declared that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."  113 F.4th 300, 308 (2d Cir. 2024).  Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient.  Plaintiffs sufficiently allege an injury-in-fact when they claim, for example, that the failure to notify "prevented the employee from obtaining full payment of wages in a timely fashion."  Id. at 309.

Here, plaintiff alleges that defendants willfully failed to provide plaintiff with a wage notice describing her regular hourly rate and overtime rate of pay, in violation of Section 195(1),

and failed to provide her with accurate paystubs showing hours worked and wages received, in violation of Section 195(3).  (FAC ¶¶ 39, 150-153).  Plaintiff further alleges that had she received these notices as required by law, she would have been informed that she was entitled to receive $15.00 an hour, except that her tips may make up the difference for her tip credit wage of $10.00 an hour, and that if her tips did not cover the $5.00 an hour differential, she would have been entitled to receive additional compensation to make up the difference so that she would earn at least the minimum wage.  (Id. ¶¶ 40, 42).  She also would have been informed that she was entitled to overtime wages at either $17.50 per hour or $22.50 an hour, depending on the amount of tips she received.  (Id. ¶¶ 40, 42).  Plaintiff claims that had she known, she would have sought to recover the minimum wage and overtime wages that she was entitled to receive.[11] (Id. ¶¶ 41, 43, 44).  As a direct and proximate result of defendants' failure to provide these notices and wage statements, plaintiff alleges that she sustained damages and seeks to recover the amounts owed for each week that defendants failed to provide such notice and paystubs.  (Id. ¶ 153).

Accordingly, plaintiff's Fourth Amended Complaint adequately alleges concrete downstream harm, and thus, the Court finds that plaintiff has sufficiently alleged an injury flowing from defendants' violations of the WTPA.

II.      Damages

A.  Legal Standard

Having determined that plaintiff has established defendant Avoyants' liability for damages flowing from FLSA and NYLL violations, the Court now must determine whether

---

[11] As it stands, plaintiff does not seek minimum wage damages, presumably due to the difficulty of calculating what portion of her minimum wages would have been made up for through tips, given the lack of records, which defendants were required to keep.

plaintiff has established her damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83. While a defendant's failure to pay overtime wages violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014). Courts will thus award damages under whichever statute would allow for greater recovery. Id.

Once the Court determines that default judgment should enter, plaintiff must still establish her entitlement to the damages sought. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"). Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages. See Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *3 (E.D.N.Y. Aug. 9, 2023).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, the court is permitted to "conduct hearings" or make referrals as necessary. Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. at 156). In any event, the defendants must have the opportunity to contest the claimed damages. See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

In this case, defendant has not answered the Complaint, responded to the Motion for Default Judgment, or appeared before the Court.[12]  Since defendant is in default, plaintiff's evidence on damages is undisputed.  As an initial matter, plaintiff's Declarations and submissions as to the hours worked and rate of pay received are sufficient bases for this Court to recommend an award of damages, even in the absence of further documentation.

B.  Calculation of Wages

Plaintiff alleges in the Fourth Amended Complaint that defendants failed to pay proper overtime wages[13] in violation of both the FLSA and NYLL.

The NYLL and the FLSA are analytically nearly identical with respect to overtime claims.  D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013).  Like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See N.Y. Lab. Law § 160; 12 N.Y.C.R.R. § 142-2.2; see also Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).

To the extent plaintiff claims that defendants failed to pay one-and-one-half times her regular rate of pay for all hours worked over 40 in a week, the Court finds that plaintiff has adequately alleged NYLL violations for the same reasons as discussed above regarding those claims under the FLSA.  The Court similarly finds that plaintiff has adequately alleged claims under New York's Wage Theft Prevention Act for the reasons discussed above.

---

[12] According to plaintiff's counsel, predecessor counsel communicated directly with Avoyants by email and therefore counsel "has personal knowledge that Avoyants has received emails concerning the case," and yet Avoyants has not filed an answer.  (Kataev Decl. ¶¶ 18, 19).

[13] Normally, plaintiff would also be entitled to minimum wage damages, namely, the differential between what she was paid for her 40 regular weekly hours, and what she would have been entitled to under the NYLL if proper wage notice was given.  However, plaintiff does not seek minimum wage damages.

Under the FLSA, a plaintiff-employee generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by, 29 U.S.C. § 251, et seq.). The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687. By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d at 294. In default cases, the Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687), overruled on other grounds by, Slayton v. American Express Co., 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of

21

employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record-keeping).

New York law also requires that employers keep various detailed employment records. Like the FLSA, the NYLL requires that employers keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See N.Y. Lab. Law § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other"); id. § 195(2) (requiring employers to notify employees in writing of any changes at least 7 calendar days prior to the time of such changes); id. § 195(3) (requiring employers to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work[;] . . . gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages"); id. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than six years . . . . payroll records showing for each week worked the hours worked; . . . gross wages; deductions; . . . and net wages for each employee"). Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the defendant. See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendant's default, plaintiffs' "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL

33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002). Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned. See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84 .

Here, because defendant Avoyants is alleged to have failed to meet his obligation to provide plaintiff with proper wage records, the only evidence offered to support plaintiff's claim that she was paid less than she was entitled to under the law is based on plaintiff's statements. Given that Avoyants has not responded to plaintiff's Fourth Amended Complaint, the Court presumptively finds plaintiff's evidence as to hours worked and wages paid credible, and bases its analysis and recommendation on plaintiff's recollection.

1) Overtime Wages Sought

Plaintiff seeks unpaid overtime wages for approximately 9 weeks during the period from September 1, 2020, through November 3, 2020. (Kataev Decl. ¶ 26). Although plaintiff may be entitled to overtime damages under both the FLSA and NYLL, she may only recover under one statute, and courts will typically award damages under the statute that would allow for the greatest recovery. Gonzales v. Gan Israel Pre-Sch., 2014 WL 1011070, at *11. Because the NYLL minimum wage she was due, at $15.00 per regular hour, was consistently higher than the minimum wage she could recover under the FLSA, plaintiff seeks damages under the NYLL.

In support of her request for damages, plaintiff submitted a Declaration in Support of Motion For Default Judgment Against Defendant Sarkis Avoyants, dated March 1, 2025 (ECF No. 123). She claims that she worked from September 1, 2020, through November 3, 2020, or approximately 9 weeks, working approximately 60 hours per week. (Ortega Decl. ¶¶ 6-7). During this time, she was paid $600.00 per week at a rate of $10.00 per hour for all hours worked. (Id. ¶ 7; Kataev Decl. ¶ 27). She also received approximately $200.00 in tips per week,

meaning that she received a total pay of $800.00 per week, including tips, for all hours worked, including those in excess of 40 hours per week.  (Ortega Decl. ¶ 7, 8; Kataev Decl. ¶ 27).

Although, in her Motion for default judgment, plaintiff does not seek damages for the alleged minimum wage violations, she calculates her overtime damages using the $15.00 minimum wage she should have been paid, including the $5.00 tip credit.  Counsel calculates overtime damages of $250.00 per week, by multiplying plaintiff's minimum wage overtime rate of $22.50 owed per hour of overtime – which accounts for time-and-a-half pay had she been properly paid $15.00 per hour – by 20 hours of overtime per week.  (Kataev Decl. ¶ 29; see also Ortega Decl. ¶ 9).  Using these calculations, plaintiff alleges she was underpaid by $250.00 per week, for a total of $2,250.00 in unpaid overtime wages during the nine-week period that she worked.  (Kataev Decl. ¶ 29).

Since plaintiff does not seek to recover the $5.00 differential per hour for the 40 regular hours she worked per week, and instead only asks for damages for the 20 overtime hours she worked per week, the Court has calculated her overtime damages based on the minimum wage of $15.00 an hour assuming she received the requisite weekly tips necessary to satisfy the $15.00 minimum.  Based on the minimum wage of $15.00 per hour, plaintiff alleges she was owed $22.50 per hour of overtime work.

Having reviewed plaintiff's submissions and calculations, the Court respectfully recommends that plaintiff be awarded $2,250.00 in unpaid overtime wages.

2)  <u>Liquidated Damages</u>

 Plaintiff requests an award of liquidated damages for defendants' overtime wage violations under the NYLL.  The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C.

§ 216(b); N.Y. Lab. Law §§ 198(1-a) and 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL only if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both the FLSA and NYLL, the employer bears the burden of proving good faith and reasonableness.  Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith."  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n.19 (S.D.N.Y. Aug. 13, 2014)); Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014).  Accordingly, the employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception."  Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)) (awarding 100% liquidated damages under the FLSA standard).  Although defendants may be liable under both statutes, plaintiffs may only recover once for liquidated damages.  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Further, liquidated damages are only available on wage claims found under the applicable statute.  See Douglas v. Spartan Demolition Co. LLC, No. 15 CV 5126, 2018 WL 4521212, at *6 (S.D.N.Y. Sept. 21, 2018).[14]  Thus, plaintiff is only entitled to recover liquidated damages for

---

[14] Liquidated damages are not available for damages under the WTPA.  Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15 CV 10186, 2021 WL 3375615, at *11 (S.D.N.Y. May 17, 2021), report and recommendation adopted sub nom., Wen v. Hair Party 24 Hours Inc., 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

her unpaid overtime claims.  Id.  Here, since the Court recommends an award of overtime damages under the NYLL, plaintiff is entitled to 100% of the damages owed for unpaid overtime wages under the NYLL as liquidated damages.  See NYLL §§ 198(1-a), 663(1).

Thus, the Court respectfully recommends that plaintiff Ortega be awarded $2,250.00 in liquidated damages under the NYLL, representing 100% of the overtime wages owed.

### 3)  Wage Theft Prevention Act Damages Sought

Plaintiff also seeks statutory damages pursuant to the WTPA based on defendants' failure to provide wage notices and wage statements as required under NYLL §§ 195(1) and 195(3). (Ortega Decl. ¶ 15).  Having reviewed the allegations in the Fourth Amended Complaint, the Court finds that plaintiff has alleged facts sufficient to assert standing under the WTPA and therefore respectfully recommends that plaintiff be awarded damages for the failure to provide proper notices and wage statements.

Under NYLL Section 198, employers are required to pay $50.00 for each workday that they fail to provide notice of pay rate as required by NYLL § 195(1), with a cap of $5,000.00. NYLL § 198(1)(b).  For each day that they fail to provide proper wage statements as required by NYLL § 195(3), employers are required to pay $250.00.00 per day, with a cap of $5,000.00.  Id. § 198(1)(d). Given that plaintiff was employed for 46 workdays, the Court finds that she is owed $2,300.00 for defendant's failure to provide wage notices, and $5,000.00 for defendants' failure to provide wage statements, for a total of $7,300.00.  (But see Kataev Decl. ¶ 36 and Ortega Decl. ¶ 15 (asserting damages of $8,150.00)).  It is unclear from counsel's papers how plaintiff arrived at the figure of $8,150.00.[15]  Thus, the Court respectfully recommends denying the

---

[15] The Court notes that it scheduled an inquest hearing to discuss issues regarding plaintiff's counsel's calculations, such as this one, with plaintiff's counsel, but plaintiff's counsel thrice asked to adjourn the inquest, twice at the last minute, again demonstrating a lack of oversight over the case, and repeated failure to adhere to the Court's rule that "[a]ll requests for adjournments or extensions must be in writing and filed electronically as a latter

Motion as to statutory damages under the WTPA, without prejudice to renew once plaintiff submits information explaining how plaintiff arrived at $8,150.00 rather than $7,300.00.

### C. Pre-Judgment Interest

Plaintiff also seeks pre-judgment interest in the amount of $2,648.18. (Kataev Decl. ¶ 38). Plaintiff calculates the pre-judgment interest owed using the rate of 9% annually under the NYLL, divided by 365, multiplied by 849, which plaintiff's counsel explains is the number of days that have passed between the date of the Declaration and the midpoint of the time period during which overtime was earned, times the total amount of damages, which plaintiff argues totals $12,650.00.[16] (Id. ¶ 39, n.3 (citing N.Y. C.P.L.R. § 5004)).

Although pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted by, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008), the Second Circuit has held that, as liquidated damages and pre-judgment

---

motion **at least two (2) business** days prior to the scheduled matter." Individual Rule III.A (emphasis in original). The original inquest was scheduled on October 21, 2025, to take place November 19, 2025. (ECF No. 124). On November 10, 2025, upon plaintiff's request, the Court adjourned the inquest to December 4, 2025. (ECF Nos. 125, 126). On December 3, 2025, the day before the inquest, plaintiff's counsel requested a second adjournment because he had supposedly just become aware that his client would be on a flight at the time of the inquest, which had been rescheduled to the new date nearly a month prior. (ECF No. 128). The Court granted this second adjournment to December 8, 2025. Once again, less than 24 hours prior to the inquest, plaintiff's counsel requested a third adjournment **four days after plaintiff's counsel was notified of the second adjourned date**, this time due to a deposition scheduled at the time plaintiff's counsel was scheduled to appear before this Court. (ECF No. 129). The Court then adjourned the inquest *sine die.*

[16] Plaintiff reaches this sum by adding the $2,250.00 in overtime pay damages, $2,250.00 in liquidated damages, and $8,150.00 in notice and wage statement violations, which, as mentioned, the Court takes issue with, having calculated the WTPA damages as $7,300.00. As discussed infra at 30, prejudgment interest is not available on the statutory damages or liquidated damages.

interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both, for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  Pre-judgment interest is available only on a plaintiff's actual damages under the NYLL, and not on liquidated damages.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).  Pre-judgment interest is also not available for amounts awarded as statutory damages under the WTPA.  Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020); Guaman v. Krill Contracting, Inc., No. 14 CV 4242, 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) (holding that prejudgment interest is not granted on amounts awarded under the WTPA).

It is well established that "[u]nder New York law, prejudgment interest is calculated at a rate of 9% per annum."  Jiaren Wei v. Lingtou Zhengs Corp., No. 13 CV 5164, 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).  Where "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  Id. (quotations omitted).  "The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest."  Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14 CV 5665, 2015 WL 13731362, at *7 (E.D.N.Y. Aug. 26, 2015).

Although plaintiff seeks overtime pay under both the FLSA and NYLL, since the Court recommends awarding overtime pay under only the NYLL, plaintiff may also be awarded prejudgment interest on her overtime claims.  See De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc., No. 20 CV 3003, 2021 WL 2227977, at *9 (E.D.N.Y. May 11, 2021), report and recommendation adopted by, No. 20 CV 3003, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (finding that "plaintiff is entitled to prejudgment interest on compensatory damages awarded

under the NYLL only to the extent that he is not being awarded liquidated damages under the functionally equivalent claim for damages under the FLSA") (collecting cases).

However, plaintiff's counsel attempted to calculate prejudgment interest on all damages plaintiff seeks – overtime wages owed, liquidated damages, and WTPA damages – which is improper in light of the above standards. Plaintiff may only be awarded prejudgment interest on her overtime wage damages. See Apolinar v. Global Deli & Grocery, Inc., No. 12 CV 3446, 2013 WL 5408122, at *12 (E.D.N.Y. Sept. 25, 2013) (holding that "prejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law") (internal quotation and citations omitted); see also Espinoza v. La Oficina Bar Corp., No. 20 CV 1237, 2022 WL 987429, at *18 (E.D.N.Y. Mar. 1, 2022), report and recommendation adopted as modified by, No. 20 CV 1237, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022) (holding that "[p]rejudgment interest is available for unpaid minimum and overtime wages under the NYLL, but not for amounts awarded under the WTPA . . . or on liquidated damages") (internal citations omitted).

In addition, it appears that plaintiff's counsel used the incorrect midpoint date for purposes of calculating prejudgment interest. The reasonable midpoint of the period in which the alleged violations occurred (the period being between and including September 1, 2020, and November 3, 2020) would be October 3, 2020. If plaintiff had used that midpoint and counted the days from October 3, 2020, to April 26, 2025, plaintiff would have found 1,667 days, not 849 days. Therefore, the Court presumes plaintiff erred in its selection of the midpoint date; it seems that plaintiff calculated the midpoint between September 1, 2020, the beginning of the violative period, and April 26, 2025, the date the Motion was filed – the midpoint of *that* period would be around December 29, 2022, and the period from December 29, 2022, to April 26, 2025,

29

comprises 849 days.  Though plaintiff's counsel cites the correct standard set out in U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34 (2d Cir. 2004) (referring to the district court's use of the "chronological midpoint" of a post-default period as the "reasonable intermediate date" from which prejudgment interest was calculated), under which the midpoint of the violative period is October 3, 2020, it does not appear that plaintiff used this date in calculating prejudgment interest.

Accordingly, the Court respectfully recommends denying plaintiff's request for prejudgment interest at this time, without prejudice to renew explaining the use of the suggested midpoint date and applying the interest rate to only plaintiff's overtime damages of $2,250.00.

III.    Attorneys' Fees and Costs

Plaintiff also seeks to recover an award of attorney's fees pursuant to the retainer agreement counsel reached with plaintiff.  (Kataev Decl. ¶ 41).  In counsel's Declaration, he indicates that his firm entered into a written retainer agreement in which plaintiff agreed that counsel would be entitled to recover costs expended in the matter out of any funds recovered by plaintiff in a judgment.  (Id. ¶ 40).  In addition, the agreement provided that counsel would be entitled to receive 40% of all remaining proceeds of such judgment.  (Ortega Decl. ¶ 21).

Pursuant to the applicable provisions of the FLSA and the NYLL, 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), plaintiffs are entitled to an award of reasonable attorney's fees and costs.  "The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted by, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

In order to determine the lodestar amount, a court must determine the "number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)), report and recommendation adopted by, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate" (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166)); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.  Counsel seeking attorney's fees are generally required to submit contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which services were charged, along with the name of the attorney, law clerk, or paralegal, and a description of services performed.  See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff also seeks an award of costs, which may be recovered under the FLSA and NYLL. (Kataev Decl. ¶ 41).

In his Declaration, plaintiff's counsel cites to two docket entries, ECF No. 103-1 and 103-2, which were submitted in connection with an earlier motion for settlement approval, filed

in 2024.  These two exhibits seem to contain billing records:  the first exhibit covers the entire

period that the case has been active, but with no indication as which attorney or paralegal

performed which of the listed tasks; the second exhibit appears to be a subset of the first exhibit,

listing only certain entries of work performed by Mr. Kataev.  Neither exhibit, however, provides

the Court with any indication as to what costs were expended in connection with this matter, nor

are there supporting invoices referencing these costs.  Plaintiff's counsel has also failed to

provide any information regarding the background and experience of the lawyers and/or support

staff for which fees are sought.

     However, it appears that counsel is not seeking to have this Court determine an award of

fees and costs to be paid for by defendant; he simply asks that the Court award fees based on the

retainer agreement he has with his client.  Thus, instead of asking the Court to approve an award

of fees and costs, he simply asks for approval of the amount of $7,800.00 to be deducted from

plaintiff's damage award, based on that retainer agreement.  (Kataev Decl. ¶ 41).  Even if

counsel is simply asking for a determination that the retainer agreement, entered into with

plaintiff, is fair – which is suspect, particularly in light of the 40% fee recovery which is

significantly higher than the average approved in this district – the Court is unable to determine,

without further information, whether this requested amount of fees passes muster under

Cheeks.[17]  The Court also notes that in the settlement plaintiff reached with other defendants,

and which was approved by this Court and the district court, the contingency fee approved for

---

[17] The Court is particularly concerned with the slipshod way in which counsel prosecuted this case, failing on numerous occasions to comply with the procedural requirements set out in the local rules and the Federal Rules, missing several court-ordered deadlines, and requiring this Court and the district court to issue a number of directives reminding counsel of his professional obligations.  In addition to these issues, the paperwork submitted in connection with the first motion for default judgment was not only short and lacking in supporting legal authority, but it was withdrawn after a suggestion from this Court noting mathematical and factual errors.  The more recent Motion for Default Judgment was not much better, with counsel requesting prejudgment interest on amounts which courts have held are not subject to interest.

the same attorney was 33% (ECF No. 90).

Accordingly, the Court respectfully recommends that no award of fees and costs be entered at this time.

IV.    <u>Automatic Penalty for Failure to Pay</u>

The NYLL provides that, "[a]ny judgment or court order awarding remedies under this section [sections 198 and 663, as does the judgment applied for herein] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab. Law §§ 198(4), 663(4).  It further provides that costs and attorney's fees incurred in enforcement of a judgment shall be awarded to the plaintiff.  <u>Id.</u>  The Court respectfully recommends that the district court include such language in its final judgment, should it adopt this Report and Recommendation.

<u>CONCLUSION</u>

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted in part and denied in part, and that plaintiff be awarded the following damages:  (1) $2,250.00 for unpaid overtime wages under the NYLL and (2) $2,250.00 in liquidated damages. The Court respectfully recommends that at this time, no statutory damages under the WTPA be awarded, until counsel for plaintiff submits further information explaining how counsel arrived at the number set forth in his Declaration, and that pre-judgment interest be denied until counsel re-calculates the interest using the correct midpoint date.  The Court further recommends that plaintiff receive post-judgment interest until the judgment is paid in full; but that no finding as to fees and costs be made at this time.  Finally, the Court respectfully recommends that, should the

district court adopt this Report and Recommendation, the district court provide in its judgment that "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent," and that plaintiff "shall have the right to collect attorney's fees and costs incurred in enforcing" the judgment.  N.Y. Lab. Law §§ 198(4), 663(4).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court **within fourteen (14) days**.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the docket within **one week** of the date of this Report.

**SO ORDERED.**

Dated:  Brooklyn, New York
        December 29, 2025

                                /s/ Cheryl L. Pollak
                                Cheryl L. Pollak
                                United States Magistrate Judge
                                Eastern District of New York